Filed 3/27/13; pub. order 4/25/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF MONTEREY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JHONRICO CARRNSHIMBA et al.,<br><br>    Defendants and Appellants.<br>_____ | H036475<br>(Monterey County<br>Super. Ct. No. M103860) |

In December 2009, Jhonrico Carrnshimba, operating a nonprofit corporation, MyCaregiver Cooperative, Inc. (collectively, appellants), opened a collective to dispense medical marijuana (Dispensary; Dispensaries) in the City of Monterey (City or Monterey).[1]  Shortly before incorporation of MyCaregiver, Carrnshimba applied for a business license with the City.  He failed to disclose that he intended to operate a Dispensary in either the application or in subsequent communications in which the City sought clarification of the nature of his intended business.  Shortly afterward, City personnel learned that appellants were dispensing medical marijuana.  The City's Assistant City Manager advised Carrnshimba that he had failed to disclose his intention to operate a Dispensary in the City; the operation of a Dispensary was not a permitted use under the City Code; the use was therefore prohibited; his business license application

_____

[1] Appellants make a distinction between dispensaries and cooperatives that dispense medical marijuana.  While such a distinction may be of significance in a case involving questions concerning compliance with State medical marijuana laws, that is not an issue present here.  We will accordingly refer broadly to any organization dispensing medical marijuana as a Dispensary.

was denied; and he was to immediately cease and desist operating the Dispensary business.  Eight days later (January 19, 2010), the City passed an ordinance declaring a moratorium temporarily prohibiting the operation of any Dispensaries.

On February 8, 2010, the City brought an action against appellants to abate a public nuisance.  After obtaining a preliminary injunction prohibiting appellants from dispensing medical marijuana, the City successfully moved for summary judgment.  The court thereafter entered a judgment that included a permanent injunction prohibiting appellants from operating a Dispensary as long as there was a citywide moratorium prohibiting such an operation.

Appellants assert that the City ordinance creating a moratorium prohibiting businesses from dispensing medical marijuana, adopted after appellants had commenced their operation, could not be applied retroactively against them.  They also challenge the City's positions below that their business operation was a public nuisance because (1) they failed to obtain a business license; and (2) a Dispensary was not an expressly permitted use under the City Code and was therefore a prohibited use of property.  Neither of these two public nuisance theories was addressed by the trial court in granting summary judgment.

We conclude that the controversy is moot because the permanent injunction entered against appellants expired, and appellants vacated the Monterey property where they operated the Dispensary.  But because this case involves issues that are important and of continuing public interest, we will exercise our discretion to consider the merits of the appeal.  We decide that the use of property in the City as a Dispensary was an impermissible use under the pre-moratorium City Code and appellants' operation of a Dispensary therefore constituted a public nuisance per se.  We hold further that because appellants acquired no vested right to operate their illegal Dispensary, the trial court properly found that appellants' continued post-moratorium operation of its Dispensary was a public nuisance per se.  Accordingly, we will affirm the judgment.

2

PROCEDURAL HISTORY

On February 8, 2010, Monterey filed a complaint against Carrnshimba and MyCaregiver, a California corporation.[2]  The City asserted one cause of action to enjoin a public nuisance per se with respect to appellants' operation of a Dispensary at 554 Lighthouse Avenue in Monterey (premises).  Monterey sought and obtained a preliminary injunction.

On July 22, 2010, Monterey filed a motion for summary judgment, which appellants opposed.  After hearing argument, the court issued its order on October 25, 2010, granting the City's motion for summary judgment.  A judgment was thereafter entered, which included the issuance of a permanent injunction, effective for the duration of the City's moratorium, against appellants' operation of a Dispensary at the premises or at any other location in Monterey.  Appellants filed a timely appeal from the judgment.

---

[2] At oral argument, we were advised by the City's counsel that MyCaregiver's status as a corporate entity had been suspended.  We requested that the parties provide supplemental briefs concerning MyCaregiver's corporate status and, if suspended, the legal effect thereof upon this ongoing appeal.  We received correspondence from the parties; appellants acknowledged that MyCaregiver had been suspended by the Secretary of State.  Because a suspended corporation may not prosecute or defend an action, nor may it prosecute an appeal from an adverse judgment (*Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1306), we directed appellant MyCaregiver to show cause why its appeal should not be dismissed.  Through its counsel, MyCaregiver responded on February 11, 2013, indicating that earlier that month, the corporation had filed tax returns for 2009, 2010, and 2011, had paid back taxes, and had applied to the California Franchise Tax Board for a certificate of revivor.  Two days later, Carrnshimba submitted to this court correspondence enclosing a copy of the certificate of revivor, effective February 12, 2013, reinstating the corporation's powers under the name "MyCaregiver Patient's Cooperative, Inc."  Accordingly, the concerns regarding MyCaregiver's corporate status brought to the attention of this court at oral argument no longer exist, and the corporation's appeal may proceed. (*Peacock Hill Assn. v. Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 373-374 [suspended corporation which revives its corporate powers by payment of back taxes may proceed with its appeal].)

FACTS[3]

In November or December 2009, Carrnshimba leased the premises for a term of two years. The premises are located in a zoning district containing the classification of a "C-2 Community Commercial District" under the City's Zoning Ordinance.[4] On December 10, 2009, Carrnshimba, listing his name as Jhonrico Carr and identifying himself as "director" of a business named "MyCaregiver Inc.," submitted to the City an application for a business license. Under penalty of perjury, he described the business he intended to operate out of the premises as: "healthcare cooperative/individual & family services." (Capitalization omitted.)

Tricia Wotan, an employee of the City's planning department, reviewed the application and, because she found Carrnshimba's description of the business to be "vague," asked for more information about it. Carrnshimba responded to Wotan in an e-mail dated December 20, 2009, indicating: "The primary function of our corporation is the member[-]based retail of various health and beauty products, natural vitamins, aroma therapy products and instructional books and DVDs (extended list of products below). . . . [¶] . . .[¶] . . . We operate in the same fashion as a Costco co-op or the Davis food co-op on a smaller-scale specializing in healthcare products." Carrnshimba identified 16 kinds of products his business would sell; medical marijuana was not among the products

---

[3] We present the essential relevant facts as taken from the papers filed in support of and in opposition to the motion for summary judgment. " 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] . . . We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. [Citation.]' [Citation.]" (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717.)

[4] Monterey's Zoning Ordinance is found in Chapter 38 of the City Code. (City Code, § 38-1.) Since the Zoning Ordinance is within the City Code, we will refer to provisions found in Chapter 38 interchangeably as the City Code and the Zoning Ordinance.

listed. Wotan approved the business use of the premises, unaware that the actual use would be for a Dispensary. She would not have given her approval if she had known the true use of the premises because Monterey has no regulation which permits the use of property as a Dispensary.

Before the business license was issued by the City's revenue department, and on or about January 5, 2010, the City learned through publicity generated by Carrnshimba that he was operating a Dispensary. Fred Cohn, as Assistant City Manager, determined that the operation of a Dispensary was not an existing permitted use under Monterey's Zoning Ordinance. He therefore concluded that appellants use of the premises "was expressly prohibited under Monterey City Code § 38-29(B)." Cohn sent a letter to Carrnshimba on January 11, 2010, (1) advising him that he had "withheld . . . [a] critical piece of information from the City," namely, that he was operating a Dispensary; (2) informing him that such use was not an enumerated land use, could not be categorized under any existing permitted use, and was therefore prohibited; (3) stating that he could seek a code amendment to allow the use of Dispensaries in Monterey; (4) indicating that his business license was rejected; and (5) demanding that he "cease and desist operations immediately." Cohn also advised in the letter that Carrnshimba could appeal Cohn's determinations to the Planning Commission.

On January 19, 2010, as an interim urgency measure, Monterey adopted Ordinance number 3441, under which "no use permit, variance, building permit, business license or other applicable entitlement for the establishment or operation of a medical marijuana dispensary [in any City zoning district] shall issue . . ."[5] The ordinance

---

[5] In connection with its summary judgment motion, Monterey filed a request that the court take judicial notice, pursuant to Evidence Code section 452, subdivision (b), of, among other things, certain provisions of Monterey Ordinance numbers 3441 and 3445, and certain sections of the City Code. The court granted the request. We likewise take judicial notice of these legislative enactments of a municipality, and we will also take

*continued*

established a moratorium on Dispensaries for a period of 45 days. The moratorium period was thereafter extended for a period of 10 months and 15 days (i.e., until on or about January 20, 2011), pursuant to Ordinance number 3445 adopted March 2, 2010.

On January 20, 2010, Carrnshimba filed an appeal with the Planning Commission concerning Cohn's determination that the Dispensary operation was not a permitted use. Carrnshimba never applied for a code amendment to allow the use of Dispensaries in Monterey. Cohn advised Carrnshimba on February 8, 2010, that the appeal could not be processed because of the moratorium resulting from the adoption of Ordinance number 3441.

Notwithstanding the City's cease-and-desist demand, appellants continued to operate the premises as a Dispensary between December 2009 and June 2010.[6]

## DISCUSSION

I.     *Post-Judgment History*

Before addressing the merits of this appeal, we note some relevant factual and procedural developments that postdate the entry of judgment.[7]  On October 19, 2010, the Monterey City Council adopted Ordinance number 3454, which extended the moratorium on the establishment and operation of Dispensaries for a period of one year.[8]  Nearly one

---

judicial notice of section 38-15 of the City Code, a section referenced by neither party. (Evid. Code, §§ 452, subd. (b), 459, subd. (a); see also *Madain v. City of Stanton* (2010) 185 Cal.App.4th 1277, 1280, fn. 1.)

[6] As discussed in part I of the Discussion, *post*, appellants in fact continued to operate the Dispensary until August 2011, long after summary judgment was granted and judgment (which included a permanent injunction) was entered in favor of the City.

[7] We are aware of these developments as a result of documents included in respondent's appendix, and documents filed herein by the parties in connection with various requests for judicial notice, which requests were granted by this court.

[8] The court below did not consider this ordinance, which was adopted nine days before the granting of summary judgment.

year later, on September 6, 2011, Monterey adopted Ordinance number 3465, which banned all Dispensaries within all zones of the City, effective 30 days after its adoption.

In the meantime, in February 2011, Monterey filed an application seeking to hold appellants and Marc Rowland[9] in contempt based upon their having allegedly violated the terms of the permanent injunction by continuing to operate a Dispensary at the premises.[10] As a result of the City's application and supplemental papers it filed, the court issued orders to show cause re contempt in February and April 2011, respectively.

In July 2011, a judgment of unlawful detainer was entered in favor of Jerald Heisel and Debra R. Heisel, Trustees of the Heisel Family Trust (the Heisels) and the owners of the premises, against appellants and Rowland. The judgment provided that the Heisels were entitled to possession of the premises and that the lease between the parties was declared forfeited. A return on a writ of possession issued in the eviction action was filed on or about August 10, 2011, indicating that appellants and Rowland had vacated the premises on or about August 1, 2011.

II.    *Mootness*

Monterey filed a motion to dismiss this appeal, arguing that the case was moot and that, in any event, the appeal should be dismissed based upon appellants' having violated the trial court's permanent injunction. Appellants opposed the motion, arguing that "[t]he appeal is not moot because appellants' defense of the pending contempt proceeding hinges on a ruling from this court that the trial court's ruling was invalid." They argued further that the appeal should not be dismissed due to any violation of the preliminary

---

[9] Rowland is a director of MyCaregiver.

[10] In support of the application, Monterey Police Officer Mike Bruno indicated in a declaration that, when he assisted in the execution of a civil inspection warrant relative to the premises on February 11, 2011, Carrnshimba and Rowland "admitted that they [were] operating a medical marijuana cooperative and that they [would] continue to do so despite the injunction since they have an appeal pending."

7

injunction resulting in them having been charged with (but not yet found in) contempt, because "if the trial court's ruling is not valid, then appellants[] cannot be held in contempt for disobeying that ruling." We denied the City's motion to dismiss the appeal. As explained below, although we agree that the issue is now moot, this appeal presents issues of continuing public interest and we will therefore exercise our discretion to decide the controversy.

The appeal is moot for two reasons. First, by its own terms, the permanent injunction was only effective for the duration of the City's moratorium, which expired October 19, 2011.[11] "If relief granted by the trial court is temporal, and if the relief granted expires before an appeal can be heard, then an appeal by the adverse party is moot. [Citation.]" (*Environmental Charter High School v. Centinela Valley Union High School Dist.* (2004) 122 Cal.App.4th 139, 144.)[12] The controversy is therefore moot. (See *Covina Union High School v. California Interscholastic* (1934) 136 Cal.App. 588, 589-590 [challenge to issuance of permanent injunction issued for specified school year was moot because school year had ended while appeal was pending].) Second, appellants are no longer tenants or occupants of the premises, the use of which as a Dispensary is the subject of the appeal. (See *Pittenger v. Home Sav. and Loan Assn. of Los Angeles*

---

[11] In reality, the moratorium ended approximately two weeks before October 19, 2011, as a result of the adoption of Ordinance number 3465 banning all Dispensaries within all zones of the City.

[12] In *Environmental Charter High School v. Centinela Valley Union High School Dist.*, *supra*, 122 Cal.App.4th at page 144, the challenged order required the appellant school district to make certain facilities available to a charter school for the 2003-2004 school year. The case was technically moot because the 2003-2004 school year court ended while the appeal was pending. (*Ibid.*) The appellate court elected to overlook the mootness of the case because of a likelihood of the recurrence of a similar dispute between the parties concerning the charter school's request for facilities in future school years. (*Ibid.*; see also *Bullis Charter School v. Los Altos School Dist.* (2011) 200 Cal.App.4th 1022, 1034-1035.)

(1958) 166 Cal.App.2d 32, 36-37 [where case involved alleged misconduct by holder of secured note, the holder's transfer of that interest where the transferee's actions were not claimed to be improper rendered case moot].)

One exception to the doctrine of mootness authorizes the court to decide a case "when a material question remains for the court's determination [citation]." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 480.) " '[W]henever the judgment, if left unreversed, will preclude the party against whom it is rendered as to a fact vital to his rights, such as to the validity of a contract upon which his rights are based, it cannot properly be said that there is left before the appellate court but a moot question, even though on account of changed conditions the relief originally sought by appellant cannot be granted upon the reversal of such judgment.' " (*Hartke v. Abbott* (1930) 106 Cal.App. 388, 394.) Appellants have argued that because there are contempt proceedings pending below against them arising out of their alleged violation of the terms of the permanent injunction, the case is not moot. Were it the case that contempt proceedings remain pending against appellants, we would conclude that the resolution of the validity of the underlying permanent injunction presented a question " 'vital to [appellants'] rights' " (*Hartke v. Abbott*, at p. 394) insofar as those contempt proceedings were concerned. But we were advised at oral argument that the City subsequently dismissed the contempt proceedings; therefore, this exception to mootness has no application here.[13]

---

[13] Although an order made in excess of the court's jurisdiction may not form the basis of a contempt order (*People v. Gonzalez* (1996) 12 Cal.4th 804, 817 ["a void order cannot be the basis for a valid contempt judgment"]), a party may not defy a legally erroneous court order and then challenge it collaterally in proceedings brought to enforce the order (*Wanke, Industrial, Commercial, Residential, Inc. v. Keck* (2012) 209 Cal.App.4th 1151, 1172, citing *Signal Oil & Gas Co. v. Ashland Oil & Refining Co.* (1958) 49 Cal.2d 764, 776, fn. 6). Appellants' challenge to the permanent injunction here appears to be on the ground that it is legally erroneous (rather than it being made in

*continued*

9

But an appellate court may exercise its discretion to decide a moot controversy when the case presents " 'important issues of substantial and continuing public interest. . .' " (*Abbott Ford, Inc. v. Superior Court* (1987) 43 Cal.3d 858, 868-869, fn. 8.) As discussed below, the legality of the operation of medical marijuana dispensaries under California's medical marijuana laws—specifically, in this case, the question of whether a dispensary is a permitted use under a particular municipal zoning ordinance—are matters of continuing public interest. We will therefore exercise our discretion to decide the merits of the controversy, notwithstanding the mootness of the case. (See *In re William M.* (1970) 3 Cal.3d 16, 23 [court may exercise discretion to decide moot case involving "issue of broad public interest that is likely to recur"]; see also *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 746.)

III.    *Standard of Review*

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) As such, the summary judgment statute, Code of Civil Procedure section 437c, "provides a particularly suitable means to test the sufficiency of the plaintiff's prima facie case and/or of the defendant's [defense]." (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203.) A summary judgment motion must demonstrate that "material facts" are undisputed. (Code Civ. Proc., § 437c, subd. (b)(1).) "The materiality of a disputed fact is measured by the pleadings." (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.)

---

excess of the court's jurisdiction). Since the contempt proceedings have been dismissed, we need not decide that question.

10

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850, fn. omitted.) A plaintiff moving for summary judgment establishes the absence of a defense to a cause of action by proving "each element of the cause of action entitling the party to judgment on that cause of action." (Code Civ. Proc., § 437c, subd. (p)(1).) The plaintiff need not, however, disprove any affirmative defenses alleged by the defendant. (*Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 565.) Once the plaintiff's burden is met, the burden of proof shifts to the defendant "to show that a triable issue of one or more material fact exists as to that cause of action or defense thereto." (*Ibid.*) In meeting this burden, the defendant must present "specific facts showing" the existence of the triable issue of material fact. (*Ibid.*) An action for public nuisance is a proper claim upon which a plaintiff may bring a summary judgment motion. (See *People v. Schlimbach* (2011) 193 Cal.App.4th 1132; *People ex rel. Dept. of Transportation v. Outdoor Media Group* (1993) 13 Cal.App.4th 1067 (*Outdoor Media*).)

Since summary judgment motions involve pure questions of law, we review the granting of summary judgment or summary adjudication de novo to ascertain from the papers whether there is a triable issue of material fact. (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.) Judicial interpretation of a municipal ordinance involves a question of law and is also subject to independent review. (*People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 113.) We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

The decision of the trial court granting "a permanent injunction rests within its sound discretion and will not be disturbed without a showing of a clear abuse of discretion. [Citation.] 'Generally, in reviewing a permanent injunction, we resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge all reasonable inferences that support the trial court's order. [Citation.] However, where the ultimate facts are undisputed, whether a permanent injunction should issue becomes a question of law, in which case the appellate court may determine the issue without regard to the conclusion of the trial court. [Citation.]' " (*People v. ex rel. Trutanich v. Joseph* (2012) 204 Cal.App.4th 1512, 1520, quoting *Cabrini Villas Homeowners Assn. v. Haghverdian* (2003) 111 Cal.App.4th 683, 688-689; see also *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.)

IV. *Issues on Appeal*

Although Monterey raised three grounds below in support of its public nuisance theory, the court relied on only one ground in granting summary judgment. The court held "that the City's moratorium applies to [appellants'] use of the premises as a medical marijuana dispensary/cooperative. A violation of the moratorium is a nuisance per se under Monterey City Code § 38-222(A). . . ." Appellants challenge the granting of summary judgment on this basis, contending that the court erred in giving retroactive effect to Ordinance number 3441, extended by Ordinance number 3454.

Appellants request that this court resolve two other matters which the trial court declined to decide, namely, the two other bases upon which the City sought an order granting summary judgment. The City argued that the operation of a Dispensary on the premises was a nuisance per se because appellants failed to comply with the local governmental requirement of obtaining a business license. Appellants contend here, as they did below, that MyCaregiver, as a nonprofit corporation, was not required under the

12

City Code to obtain a business license and that therefore its operation out of the premises was not unlawful.[14] In addition, appellants ask us to decide the City's third contention below upon which the trial court declined to rule: Whether the operation of a Dispensary was an impermissible use of property under Monterey's Zoning Ordinance, and that therefore appellants' use of the premises for that purpose constituted a nuisance per se.

We address, to the extent necessary to resolve this appeal, these claims below.

V.     *Summary of Medical Marijuana Laws*

Although this case does not present a challenge to this state's medical marijuana laws, we believe it is helpful to provide a brief overview of the 1996 voter's initiative known as "the Compassionate Use Act" (CUA) and the Medical Marijuana Program (MMP) legislation enacted in 2003.

In November 1996, the California voters passed Proposition 215, the Compassionate Use Act of 1996 (Prop. 215, § 1, as approved by electors, Gen. Elec. (Nov. 5, 1996) adding Health & Saf. Code, § 11362.5).[15] The CUA provides limited immunity from criminal prosecution for possession of marijuana (§ 11357) and cultivation of marijuana (§ 11358) for two limited classes of persons: those who qualify as medical marijuana patients, and persons who constitute caregivers of such patients. (§ 11362.5, subds. (d), (e); see *People v. Mower* (2002) 28 Cal.4th 457, 470-471.) It was enacted with the twin goals of "ensuring that seriously ill Californians have the right to

---

[14] Appellants also assert that "[a] conditional use permit was issued to MyCaregiver" and that later "the City revoked the permit." These assertions are unsupported by the record. At most, the record shows that Carrnshimba applied for a business license on December 10, 2009, the City's Fire Department and Planning Department signed off on the application, but the license was never issued. There is no evidence in the record that appellants sought or obtained a conditional use permit from the City.

[15] All further statutory references are to the Health and Safety Code unless otherwise specified.

obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician" for the treatment of illnesses for which marijuana provides relief (§ 11362.5, subd. (b)(1)(A)); and of safeguarding qualified patients and their primary caregivers from criminal prosecution for obtaining and using medical marijuana (§ 11362.5, subd. (b)(1)(B)). (*People v. Colvin* (2012) 203 Cal.App.4th 1029, 1034-1035.) There is no mention of Dispensaries in the CUA. (See *City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1173 (*Kruse*) ["[t]he CUA does not authorize the operation of a medical marijuana dispensary"].)

The Supreme Court has explained that "[t]he [CUA] is a narrow measure with narrow ends." (*People v. Mentch* (2008) 45 Cal.4th 274, 286, fn. 7 (*Mentch*); see also *id.* at p. 286 [rejecting expansive definition of " 'caretaker' " under the CUA]; *Ross v. RagingWire Telcommunications, Inc.* (2008) 42 Cal.4th 920, 930 [because the CUA has "modest objectives," it did not require employers to accommodate marijuana use by medical marijuana patient].) Because of the narrowness of the scope of the statute, courts have held that the CUA does not exempt persons from criminal liability in a number of different contexts. The CUA has been held not to offer a defense in connection with (1) the transportation of marijuana allegedly for use for medical purposes (*People v. Young* (2001) 92 Cal.App.4th 229, 237; *People v. Trippet* (1997) 56 Cal.App.4th 1532, 1550); (2) the sale of medical marijuana to patients and their caregivers, even if the sales are not for profit (*People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1394); (3) the cultivation or personal use of marijuana where the defendant receives postarrest medical approval (*People v. Rigo* (1999) 69 Cal.App.4th 409, 412); (4) the cultivation of marijuana for the person's own use and for a cannabis buyers' cooperative (*People v. Galambos* (2002) 104 Cal.App.4th 1147, 1152); and (5) the formation of a cooperative to collectively cultivate and possess marijuana for qualified patients and primary caregivers (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 767 (*Urziceanu*)).

14

In 2003, the Legislature enacted the MMP (§ 11362.7 et seq.). The intent of the Legislature in enacting the MMP was to: "(1) Clarify the scope of the application of the [CUA] and facilitate the prompt identification of qualified patients and their designated primary caregivers in order to avoid unnecessary arrest and prosecution of these individuals and provide needed guidance to law enforcement officers. [¶] (2) Promote uniform and consistent application of the act among the counties within the state. [¶ And] (3) Enhance the access of patients and caregivers to medical marijuana through collective, cooperative cultivation projects." (Stats. 2003, ch. 875, § 1, subd. (b)(1)-(3).)

The high court has explained the role of the MMP in clarifying the scope of the CUA as follows: "As part of its effort to clarify and smooth implementation of the [CUA], the [MMP] immunizes from prosecution a range of conduct ancillary to the provision of medical marijuana to qualified patients. [Citation.]" (*Mentch*, *supra*, 45 Cal.4th at p. 290.) The MMP, under section 11362.765, subdivision (b), granted immunity from criminal prosecution to qualified patients or caregivers for the transportation or processing of medical marijuana for the patient's personal use, and to those who assist qualified patients or caregivers in the administration of, or teaching how to cultivate, medical marijuana. (*Mentch*, at p. 291.) The MMP, under section 11362.1, addressed the goal of identifying persons qualified under the CUA by establishing a voluntary identification card program to facilitate " 'the prompt identification of qualified patients and their designated primary caregivers.' " (*People v. Wright* (2006) 40 Cal.4th 81, 93.)

The MMP, in an effort to foster uniform and consistent application of the law, specified the maximum amount of marijuana a patient or caregiver could possess or cultivate for personal medical uses, authorized physicians to prescribe greater amounts in

15

certain instances, and authorized cities and counties to establish guidelines that exceeded the specified base amounts. (See § 11362.77.)[16]

The Legislature, under section 11362.775, in seeking to improve access to medical marijuana, "also exempted those qualifying patients and primary caregivers who collectively or cooperatively cultivate marijuana for medical purposes from criminal sanctions for possession for sale, transportation or furnishing marijuana, maintaining a location for unlawfully selling, giving away, or using controlled substances, managing a location for the storage, distribution of any controlled substance for sale, and the laws declaring the use of property for these purposes a nuisance." (*Urziceanu*, *supra*, 132 Cal.App.4th at p. 785.) In the view of the *Urziceanu* court, the MMP "represent[ed] a dramatic change in the prohibitions on the use, distribution, and cultivation of marijuana for persons who are qualified patients or primary caregivers. Its specific itemization of the marijuana sales law indicates it contemplates the formation and operation of medicinal marijuana cooperatives that would receive reimbursement for marijuana and the services provided in conjunction with the provision of that marijuana." (*Ibid.*; but see *People v. ex rel. Trutanich v. Joseph*, *supra*, 204 Cal.App.4th at p. 1523 [MMP "does not cover dispensing or selling marijuana"]; *Kruse*, *supra*, 177 Cal.App.4th at p. 1175 [MMP makes no mention of Dispensaries or the licensing or location of them].)[17]

---

[16] The Supreme Court held in *People v. Kelly* (2010) 47 Cal.4th 1008 that, to the extent section 11362.77 of the MMP amended the CUA to burden a defense otherwise available under the CUA by establishing specific quantitative limitations for marijuana possession and cultivation by qualified patients and their caregivers, it was unconstitutional.

[17] As pointed out recently by the Fourth District Court of Appeal, Division One, the notion that the MMP, and specifically section 11362.775, does not address the dispensing or sale of medical marijuana is at odds with (1) guidelines concerning medical marijuana promulgated by the Attorney General at the specific direction of the Legislature under section 11362.81, subdivision (d) (see California Attorney General's Guidelines for the Security and Non–Diversion of Marijuana Grown for Medical Use

*continued*

16

Several courts have rejected Dispensaries' claims that local regulation of medical marijuana distribution is preempted by the voters' and Legislature's adoption of the CUA and the MMP, respectively.[18] For instance, in *Kruse*, *supra*, 177 Cal.App.4th at pages 1168 to 1176, the appellate court held that neither the CUA nor the MMP preempted the field to preclude the city in that case from adopting a moratorium temporarily prohibiting the operation of Dispensaries within city limits. Likewise, the Second District Court of Appeal, Division One, recently rejected a claim by a Dispensary—which, like appellants here, had commenced operations without having first obtained a business license, conditional use permit, or zoning variance—that Los Angeles County's zoning, permit, and licensing restrictions applicable to Dispensaries were preempted by the MMP. (*County of Los Angeles v. Hill* (2011) 192 Cal.App.4th 861, 867; see also *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704 [neither CUA nor MMP preempted county from adopting ordinance regulating cultivation of medical marijuana]; cf. *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 754-755 (*Qualified Patients*) [court expressly declines to decide whether MMP preempted local legislation].) And at least two courts have rejected claims that State medical marijuana laws were preempted by the federal Controlled Substances Act (21 U.S.C. §§ 801-904.)

---

(Aug.2008) [http:// ag.ca.gov /cms_attachments/press/pdfs/n1601_ medicalmarijuanaguidelines.pdf] (Attorney General's Guidelines)); and (2) the Legislature's subsequent adoption of section 11362.768, which provides in part, in subdivision (e), that " 'a medical marijuana cooperative, collective, dispensary, operator, establishment, or provider that is authorized by law to possess, cultivate, or distribute medical marijuana and that has a storefront or mobile retail outlet which ordinarily requires a local business license' may not be located within a 600–foot radius of a school." (*People v. Jackson* (2012) 210 Cal.App.4th 525, 537.)

[18] We provide this information as necessary background to our discussion of medical marijuana laws, noting that appellants here do not assert a preemption claim.

(*Qualified Patients*, at pp. 756-763; *County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 819-828.)[19]

VI.     *Propriety of Summary Judgment Order*

A.     *Public Nuisances Generally*

A city is constitutionally authorized to "make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.)  It may by legislative declaration state what activities or conditions may constitute a nuisance.  (Gov. Code, § 38771; see also *Amusing Sandwich, Inc. v. City of Palm Springs* (1985) 165 Cal.App.3d 1116, 1129.)  Thus, a city council may, by ordinance, declare what it deems to constitute a public nuisance.  (*Flahive v. City of Dana Point* (1999) 72 Cal.App.4th 241, 244.)

An act or condition legislatively declared to be a public nuisance is " 'a nuisance per se against which an injunction may issue without allegation or proof of irreparable injury.' [Citation.]" (*Outdoor Media*, *supra*, 13 Cal.App.4th at p. 1076.)  "[T]o rephrase the rule, to be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some

---

[19] As seen from a number of decisions filed within the past year, California appellate courts are divided on the question of whether a local governmental entity may impose an outright ban on the establishment of Dispensaries within its jurisdiction. Several cases are presently pending before the California Supreme Court concerning whether (1) a local government's attempt to ban or regulate Dispensaries is a matter preempted by state law under the CUA and the MMP, and (2) local ordinances regulating or banning Dispensaries are preempted by federal law. (See *County of Los Angeles v. Alternative Medicinal Cannabis* (2012) 207 Cal.App.4th 601, review granted Sept. 19, 2012, S204663; *420 Caregivers, LLC v. City of Los Angeles* (2012) 207 Cal.App.4th 703, review granted Sept. 19, 2012, S204684; *City of Lake Forest v. Evergreen Holistic Collective* (2012) 203 Cal.App.4th 1413, review granted May 16, 2012, S201454; *City of Riverside v. Inland Empire Patient's Health & Wellness Center, Inc.* (2011) 200 Cal.App.4th 885, review granted Jan. 18, 2012, S198638; *People v. G3 Holistic, Inc.*, review granted Jan. 18, 2012, S198395.)

18

applicable law." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1207.) Thus, the only issues for the court's resolution in a nuisance per se proceeding are whether the statutory violation occurred and whether the statute is constitutional. (*City of Bakersfield v. Miller* (1966) 64 Cal.2d 93, 100; see also *City of Costa Mesa v. Soffer* (1992) 11 Cal.App.4th 378, 382-383.)

B. *Nuisance—Impermissible Use Under (Pre-Moratorium) City Code*

Monterey asserted that appellants' use of the premises constituted a nuisance per se because the operation of a Dispensary was not a permitted use under the City Code as it existed before the Dispensary moratorium was adopted. Although the court below did not decide this question, we will address it here because we deem it both dispositive and to be an issue related to the ground upon which the court based its ruling (i.e., that appellants' operation was in violation of the Dispensary moratorium).

1. *Monterey City Code*

Courts interpret municipal ordinances in the same manner and pursuant to the same rules applicable to the interpretation of statutes. (*Russ Bldg. Partnership v. City and County of San Francisco* (1988) 44 Cal.3d 839, 847, fn. 8; *People ex rel. Kennedy v. Beaumont Investment, Ltd.* (2003) 111 Cal.App.4th 102, 113; *Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70 Cal.App.4th 281, 290.) Although statutory interpretation is ultimately a judicial function, " 'the contemporaneous construction of a statute by an administrative agency charged with its administration and interpretation, while not necessarily controlling, is entitled to great weight and should be respected by the courts unless it is clearly erroneous or unauthorized [citations].' " (*Anderson v. San Francisco Rent Stabilization & Arbitration Bd.* (1987) 192 Cal.App.3d 1336, 1343.) As with any statutory interpretation, "our first task . . . is to ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 (*Dyna-Med*).) In attempting to ascertain such intent, we begin by looking at the

19

language of the statute itself.  (*Ibid.*)  "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.  [Citations.]"  (*Id.* at p. 1387.)

The City Code provides that "any use of any land, building, or premise established, conducted, operated, or maintained contrary to the provisions of this ordinance shall be, and the same is hereby declared to be unlawful and a public nuisance."  (City Code, § 38-222(A).)  That section authorizes the City Attorney to commence litigation to abate such a declared public nuisance, including applying for injunctive relief.  (*Ibid.*)

The premises were located within the C-2 Community Commercial District (C-2 District) designated by Monterey.  In the City Code, there is a recital that the C-2 District "is intended to provide sites for retail shopping areas containing a wide variety of commercial establishments, including:  retail stores and businesses selling home furnishings, apparel, durable goods, and specialty items; restaurants; commercial recreation; service stations; and business, personal, and financial services."  (City Code, § 38-29(A).)  That section of the City Code lists a number of examples (50) of commercial use classifications, identifying 18 as permitted uses in the C-2 District and 32 as ones which may be allowed upon the City's approval of a use permit.  The operation of a Dispensary is not listed among the 50 examples of such classifications.  (City Code, § 38-29(B).)

The City Code empowers the Deputy City Manager of Plans and Public Works (Deputy City Manager) to "determine whether a specific use shall be deemed to be within one or more use classifications or not within any use classification in this chapter.  The Deputy City Manager of Plans and Public Works may determine that a specific use shall not be deemed to be within a classification, whether or not named within the classification, if its characteristics are substantially incompatible with those typical uses

20

named within the classification." (City Code, § 38-12.) A decision by the Deputy City Manager may be appealed to the City Planning Commission. (*Ibid.*)

2. *Appellants' Failure to Exhaust Administrative Remedies*

Appellants' challenges center around the applicability of the City's moratorium on the establishment or operation of Dispensaries; the significance of their failure to obtain a business license; and whether under the City Code (pre-moratorium), their use of the premises was prohibited. Although appellants request that we decide in their favor that the operation of a Dispensary was a permissible use under the pre-moratorium City Code, the City argues that appellants are procedurally barred. The City contends that appellants' failure to bring a mandamus proceeding to challenge the City's use determination and their failure "to make use of the administrative process to challenge the City's determination that a marijuana dispensary is not a use classified in the City's zoning ordinance," precludes their assertion on appeal that their pre-moratorium use of the premises as a Dispensary was a permitted use. This argument has some facial appeal.[20]

We note that appellants' challenges do not occur through the more conventional means of a mandamus proceeding or declaratory relief action. (See, e.g., *County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312 [Dispensary, after county issued stop order due to absence of required permit, brought mandamus and declaratory relief action challenging ordinance on equal protection grounds]; *Qualified Patients*, *supra*, 187 Cal.App.4th 734 [Dispensary challenged local ordinance on preemption grounds by suit for declaratory relief].) Judicial review of an administrative decision involving land use, such as the denial of a conditional use permit, is exclusively through an administrative

---

[20] As appellants filed no reply brief, they did not respond to this, or any other point, raised by the City in the respondent's brief.

21

mandamus action under Code of Civil Procedure section 1094.5. (*SP Star Enterprises, Inc. v. City of Los Angeles* (2009) 173 Cal.App.4th 459, 468.) Similarly, a determination on a variance application is an adjudicative decision (*Arnel Development Co. v. City of Costa Mesa* (1980) 28 Cal.3d 511, 522) and is subject to being challenged through a petition for administrative writ of mandamus. (See 1 Cal. Land Use Practice (Cont.Ed.Bar 2011) § 7.24, p. 332.4.) And a party may test the validity of a zoning ordinance by bringing an action for declaratory relief. (*Zubarau v. City of Palmdale* (2011) 192 Cal.App.4th 289, 308.)

Here, Cohn, on behalf of the City— exercising his powers as Deputy City Manager under City Code section 38-12—advised Carrnshimba on January 11, 2010, that he (Cohn) had determined that the operation of a Dispensary "was not an enumerated use under the City's Zoning Ordinance, and that it could not be categorized under any existing permitted use"; and appellants' use of the premises for that purpose was therefore expressly prohibited under City Code section 38-29(B). Although Carrnshimba filed an administrative appeal of Cohn's determination, the City effectively rejected that appeal by advising Carrnshimba 19 days after filing of the appeal that it would not be processed because of the City's adoption of the moratorium (Ordinance number 3441).

Appellants did not judicially challenge the City's denial of the administrative appeal or Cohn's underlying determination that appellants' operation of the premises as a Dispensary constituted an unpermitted use. Likewise, appellants did not seek a code amendment or variance authorizing the use of the premises as a Dispensary.[21] And

---

[21] We note that although appellants also failed to apply for a code amendment or variance authorizing the use of the premises as a Dispensary, this proposed action would have likely been futile; had they filed such an application, once the City adopted Ordinance number 3441 on January 19, 2010, the application would have been summarily rejected based upon the existence of the Dispensary moratorium. (See *Alta Loma School Dist. v. San Bernardino County Com. on School Dist. Reorganization*

*continued*

appellants did not employ the traditional method of mandamus to challenge the agency's land use decision. (See, e.g., *County of Sonoma v. Superior Court*, *supra*, 190 Cal.App.4th 1312; *Qualified Patients*, *supra*, 187 Cal.App.4th 734.) Appellants could have filed a petition for writ of mandamus once they were notified by the City that it would not proceed with the administrative appeal of Cohn's adverse determination. But they elected to not do so, and instead continued to operate the Dispensary in defiance of the City's cease and desist letter.

*Kruse*, *supra*, 177 Cal.App.4th 1153 offers support for the City's position. There, the defendants' applications for a business permit and business license to operate a Dispensary were denied on the ground that the proposed use was not allowed under the Claremont city code. (*Id.* at pp. 1158-1159.) The city (similar to the circumstances here), relied on a table contained in its land use code which enumerated permitted uses to conclude that the defendants' proposed use as a Dispensary was not allowed under the city code. (*Id.* at p. 1159.) Claremont advised that the defendants needed to seek a code amendment authorizing the nonconforming use. (*Id.* at p. 1158.) The defendants, like appellants here, nonetheless opened their Dispensary, and neither applied for a code amendment nor requested a determination from Claremont that their use was similar to uses authorized in the land use code. (*Id.* at p. 1159.) Claremont prevailed after a trial in their nuisance abatement action (*id.* at pp. 1161-1162), and the appellate court affirmed (*id.* at pp. 1164-1165). The *Kruse* court observed that the defendants in that case could not pursue an appellate challenge to the denial of their business license and permit applications "because they chose to commence operating without obtaining the requisite approvals to do so, in violation of applicable city laws. Moreover, after [Claremont] dismissed defendants' administrative appeal from the denial of their applications for a

(1981) 124 Cal.App.3d 542, 555 [exhaustion of administrative remedies not required where pursuing administrative process to conclusion would have been futile].)

23

business license and permit, defendants' proper recourse was to file a petition for writ of mandate. [Citations.] They did not do so. Instead, they continued to operate illegally, despite [Claremont's] repeated directives to cease and desist from doing so. [Claremont's] discretionary decision to deny defendants' applications is not at issue in this action to enjoin defendants from operating in violation of [Claremont's] municipal code." (*Id.* at p. 1165.)

Appellants here, as was the case with the defendants in *Kruse*, failed to exhaust their administrative remedies after Monterey determined under its pre-moratorium City Code that appellants' operation of a Dispensary was not a permitted use and after the City rejected appellants' administrative appeal of that determination. We therefore conclude that appellants should not be allowed to challenge—as a defense to the public nuisance claim—the City's determination that their use of the premises was not permissible. Notwithstanding appellants' failure to exhaust their administrative remedies, we will address the merits of the question raised in their appeal.

### 3. *Appellants' Use Violated Pre-Moratorium City Code*

Although appellants' have failed to exhaust their administrative remedies, we nonetheless conclude on the merits that their operation of the premises as a Dispensary was not a permitted use under the pre-moratorium City Code. As noted, 50 commercial use classifications are specified under City Code section 38-29 as being available for property located in a C-2 District, either as permitted uses or as uses of property permitted after the City's approval of a use permit. Such a regulatory scheme would be pointless unless it were construed as defining permitted commercial uses of property in a C-2 District with the corollary that unlisted commercial uses that cannot reasonably be included in any listed use classification are not permitted.

This intent is evidenced further by the manner in which the City has interpreted and applied the City Code in this instance. Cohn—the Deputy City Manager charged with the responsibility of interpreting the City Code by determining whether a specific

24

use should be deemed to be within a use classification identified in any ordinance (City Code, § 38-12)—concluded that the operation of a Dispensary could not be categorized under any use classification specified in City Code section 38-29(B), and appellants' use was therefore not permitted. This evidence of the City's interpretation of its own City Code "is entitled to deference" in our independent review of the meaning or application of the law. (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 219.) And the City, as evidenced by its actions here in denying appellants' application for a business license and in demanding that it cease its Dispensary operations, acted consistently with its interpretation that uses not listed in section 38-29(B) of the City Code as permitted uses or uses subject to obtaining a use permit, are prohibited uses of C-2 District property.

Appellants, however, assert that the operation of a Dispensary is a use which falls within three of the listed commercial use classifications under City Code section 38-29(B), namely, "Personal Services," "Retail Sales," and "Pharmacies and Medical Supplies." They contend that the characteristics of a Dispensary are not "substantially incompatible with those typical uses named within the [use] classification" (City Code, § 38-12), and therefore Cohn's determination was erroneous. We reject appellants' contentions.

A personal service is "[a]n act done personally by an individual. In this sense, a personal service is an economic service involving either the intellectual or manual personal effort of an individual, as opposed to the salable product of the person's skill." (Black's Law Dict. (9th ed. 2009), p. 1260, col. 1.) Further, Monterey—under the general heading in its Zoning Ordinance, "Commercial Use Classifications"—describes "personal services" as follows: "Provision of recurrently needed services of a personal nature. This classification includes barber and beauty shops, seamstresses, tailors, shoe repair shops, dry cleaning agencies (excluding bulk processing plants), photocopying,

self-service laundries, massage establishments, and escort services. (Ord. 3438 § 2, 2009)" (City Code, § 38-15(X).)

The operation of a Dispensary does not fit into the classification of "personal services" under either definition above. Under the MMP, qualified medical marijuana patients and primary caregivers are allowed to "associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes . . . [without being made] solely on the basis of that fact . . . subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570." (§ 11362.775.) Although the precise parameters of a Dispensary operating lawfully under California law remain undefined by case law or statute, the operation of a Dispensary, under which qualified patients and caregivers may "come together to collectively or cooperatively cultivate physician-recommended marijuana" (Attorney General Guidelines, p. 8) does not fall within the term "personal services."[22] We identify that term with activities involving a person or persons providing labor of a manual or intellectual type in exchange for payment, such as mechanics, contractors, barbers, tailors, accountants, financial planners, or attorneys.

We also find that the operation of a Dispensary does not fall within the use classification of retail sales. The term "retail" connotes "[t]he sale of goods or commodities to ultimate consumers, as opposed to the sale for further distribution or processing." (Black's Law Dict. (9th ed. 2009) p. 1430, col. 1.) And under the City Code, "Retail Sales" is defined as "[t]he retail sale of merchandise not specifically listed under another [commercial] use classification. This classification includes department

_____

[22] We are assisted by the 2008 guidelines of the Attorney General, which provide considerable discussion on the subject of Dispensaries. (Attorney General Guidelines, pp. 8-11; see also *Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 829 [opinions of the Attorney General are not binding, but "are entitled to considerable weight"].)

stores, clothing stores, and furniture stores, and businesses retailing the following goods: toys, hobby materials, handcrafted items, jewelry, cameras, photographic supplies, electronic equipment, records, sporting goods, kitchen utensils, hardware, appliances, art, antiques, art supplies and services, paint and wallpaper, carpeting and floor covering, office supplies, bicycles, and new automotive parts and accessories (excluding service and installation)." (City Code, § 38-15(Z).) Although medical marijuana is certainly a good or commodity, it stretches beyond its limits the meaning of a retail sale to include within that category the noncommercial circumstances under which a collective of patients and caregivers qualified under the CUA and MMP come together to cultivate medical marijuana.

Moreover, we reject appellants' contention that their dispensary fell within the commercial use classification of a pharmacy or medical supply house. As defined in the Business and Professions Code, a " '[p]harmacy' means an area, place, or premises licensed by the [State Board of Pharmacy] in which the profession of pharmacy is practiced and where prescriptions are compounded. 'Pharmacy' includes, but is not limited to, any area, place, or premises described in a license issued by the [State Board of Pharmacy] wherein controlled substances, dangerous drugs, or dangerous devices are stored, possessed, prepared, manufactured, derived, compounded, or repackaged, and from which the controlled substances, dangerous drugs, or dangerous devices are furnished, sold, or dispensed at retail." (Bus. & Prof. Code, § 4037, subd. (a).) Further, a prescription under the same article 2 of the Pharmacy Law is an order that is written, oral, or made by electronic transmission which includes, among other information, the name of the prescriber, the name of the patient, the name and quantity of the drug or device prescribed, and the date of issuance of the order. (Bus. & Prof. Code, § 4040, subd. (a).) The City defines "Pharmacies and Medical Supplies" as "[e]stablishments primarily selling prescription drugs, medical supplies, and equipment." (City Code, § 38-15(Z)(2).)

27

In the case of a Dispensary, medical marijuana is supplied to qualified patients and qualified caregivers (for ultimate consumption by qualified patients) as a result of cooperative or collective cultivation efforts of such patients and caregivers. Under the CUA, one becomes a qualified patient by virtue of "possess[ing] or cultivat[ing] marijuana for the personal medical purposes of the patient *upon the written or oral recommendation or approval of a physician*." (§ 11362.5, subd. (d), italics added.) This cannot reasonably be construed as constituting a prescription for medical marijuana, because, inter alia, nothing in the statute requires that the physician's recommendation or approval contain a date or indicate a specific quantity required for the patient. (See *People v. Windus* (2008) 165 Cal.App.4th 634, 642.) And, most fundamentally, a Dispensary is not "licensed by the [State Board of Pharmacy] . . ." (Bus. & Prof. Code, § 4037, subd. (a).) A Dispensary does not fall within the model under which a pharmacy or medical supply house conducts retail sales of prescription pharmaceuticals and medical supplies to customers. A Dispensary, therefore, does not fit within that designated commercial use classification.[23]

*City of Corona v. Naulls* (2008) 166 Cal.App.4th 418 (*Naulls*) closely parallels this case. There, the City of Corona, like Monterey here, had zoning laws that identified particular uses that were permitted in particular zoning areas, but none specified a

---

[23] Appellants also argue that the City's adoption in January 2010 of a Dispensary moratorium "is proof that MyCaregiver fits the existing classifications. If the existing zoning laws were adequate to prevent medical marijuana operations, as the City claims, then the City Council had no reason to pass the urgency measure, and to extend it for the maximum time allowed by law. [Citation.]" We need not address this claim for which no supporting legal authority is provided. (*Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [appellate courts "need not consider an argument for which no authority is furnished"].) In any event, we are unpersuaded by the argument that the City's adoption of Ordinance 3441 (and the succeeding ordinances) signaled that the operation of a Dispensary was within the specifically designated use classifications contained in the pre-moratorium City Code.

28

Dispensary as a permitted use in any area. (*Id.* at p. 423.) A party seeking to use property in a manner other than as expressly permitted could apply to have Corona amend its zoning ordinance or could request a finding that the proposed use was similar to permitted uses and was therefore itself permitted. (*Ibid.*) The defendants, intending to open a Dispensary, had misled Corona by describing their proposed activity in a business license application as " 'Misc. Retail' " and had failed to disclose the nature of the intended business. (*Id.* at p. 421.) Additionally, the principal of the defendant organization was informed by Corona that a Dispensary was not a land use permitted under its zoning laws. (*Ibid.*) The defendants nonetheless—and without seeking to amend the zoning ordinance or requesting a similar use finding (*id.* at p. 423)— commenced the Dispensary operation. (*Id.* at pp. 421-422.)

Corona filed suit to abate a public nuisance per se (*Naulls*, *supra*, 166 Cal.App.4th at p. 422) and obtained a preliminary injunction preventing the defendants from operating a Dispensary. (*Id.* at p. 424.) The trial court noted that the defendants had concealed the nature of their intended operation and had failed to follow procedures required for obtaining a variance for a nonconforming use. (*Ibid.*) And the trial court "found that [Corona's] municipal code is drafted in a permissive fashion, i.e., any use not enumerated in the code is presumptively prohibited. Thus, because medical marijuana dispensaries are not enumerated within the code, [the defendants are] operating within [Corona] as a nonpermitted, nonconforming use." (*Id.* at p. 425.) The trial court held that "because any nonenumerated use is presumptively prohibited under [Corona's] municipal code, the operation of [the defendants] constituted a nuisance per se." (*Id.* at p. 424.)

The appellate court affirmed, finding that there was substantial evidence to support the trial court's finding of a nuisance per se. (*Naulls*, *supra*, 166 Cal.App.4th at p. 427.) It emphasized that the defendants had failed to take the necessary steps to obtain city approval for their nonconforming operation before opening their doors for business,

29

thereby violating Corona's municipal code; as such, the operation was a nuisance per se. (*Ibid.*; see also *id.* at pp. 429, 432.) The appellate court also found that the zoning ordinance demonstrated "an intent by [Corona] to prohibit uses not expressly identified." (*Id.* at p. 432.) It noted that the regulatory scheme provided that specified uses set forth in a table were either permitted, conditionally permitted, or not permitted, and that a business owner seeking to use property for a purpose not specifically allowed under the law—such as a Dispensary—was required to comply with applicable municipal code provisions by seeking city approval for a proposed similar use. (*Ibid.*) The court also relied on the canon of construction, *expressio unius est exclusio alterius*—meaning " 'the expression of certain things in a statute necessarily involves exclusion of other things not expressed' " (*Dyna–Med*, *supra*, 43 Cal.3d at p. 1391, fn. 13)—in reaching the conclusion that the identification of permissible land uses was an indication that all other uses of land not expressly permitted were deemed impermissible under the ordinance. (*Naulls*, at p. 433; see also *Kruse*, *supra*, 177 Cal.App.4th at pp. 1164-1165 [because Claremont's land use code expressly prohibited any use of property not specifically enumerated as permitted use, and Dispensary was not enumerated permitted use, defendants' operation of Dispensary was public nuisance].)

Here, Monterey's City Code specified 50 commercial use classifications for C-2 Districts, designated as "P" as being "permitted in the C-2 [D]istrict" or "U" as being "allowed on approval of a use permit." (City Code, § 38-29(B).) It provided that the Deputy City Manager would determine whether a particular use of property fell within any designated use classification. (City Code, § 38-12.) And—similar to *Naulls*, where Corona's zoning laws provided that a citizen could request a finding that his or her proposed use was similar to permitted uses (*Naulls*, *supra*, 166 Cal.App.4th at p. 423)—a person dissatisfied with the Deputy City Manager's determination could pursue an administrative appeal with Monterey's Planning Commission. (City Code, § 38-12.) Drawing on the reasoning of *Naulls*, Monterey's City Code, like Corona's, demonstrated

30

"an intent by the City to prohibit uses not expressly identified" (*id.* at p. 432) or determined by the Deputy City Manager to fall within a designated use classification. Because the City Code, and specifically section 38-29 concerning property in the C-2 District, made no mention of a Dispensary, and because the Deputy City Manager determined that a Dispensary operation did not fall within any designated use classifications—a determination which we have concluded above to have been appropriate—appellants' Dispensary was a prohibited use under local law. It constituted a nuisance per se under City Code section 38-22(A). Therefore, although this was not the basis upon which the court granted summary judgment in favor of the City, we find that the court's ruling was proper because appellants' Dispensary operation was not a permitted use under the pre-moratorium City Code.[24]

### C. *Nuisance—Moratorium on Dispensaries*

The trial court based its order granting summary judgment on the finding that appellants' operation of a Dispensary violated the City's moratorium, as embodied in Ordinance numbers 3441 and 3445, and that appellants' use of the premises therefore constituted a nuisance per se. Appellants challenge this conclusion, arguing that the court improperly applied the moratorium retroactively to their operation of a Dispensary.

---

[24] Code of Civil Procedure section 437c, subdivision (m)(2) provides in part: "Before a reviewing court affirms an order granting summary judgment or summary adjudication on a ground not relied upon by the trial court, the reviewing court shall afford the parties an opportunity to present their views on the issue by submitting supplemental briefs." In this case, our affirmance of the trial court's grant of summary judgment is in part on a ground not relied upon by the trial court, i.e., that the operation of a Dispensary was not a permitted use under the pre-moratorium City Code. Both parties in fact fully briefed this issue on appeal, and appellants, in doing so, specifically requested that we decide the question. It is therefore debatable whether a supplemental briefing notice is required. (See *Bains v. Moores* (2009) 172 Cal.App.4th 445, 471, fn. 39; *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1147.) But we nonetheless notified the parties that they could elect to submit supplemental briefing on this issue. Monterey submitted a supplemental brief, which we have considered.

31

While we have concluded that summary judgment was proper on another ground—i.e., that appellants' Dispensary was not a permitted use under the pre-moratorium City Code—we nonetheless conclude that, because appellants' use of the premises was unlawful at the time the moratorium went into effect, the trial court's basis for granting summary judgment was likewise proper.

Absent "an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature or the voters must have intended a retroactive application." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1209 (*Evangelatos*).) There must be " 'express language or clear and unavoidable implication negativ[ing] the presumption' " of nonretroactivity. (*Id.* at p. 1208, quoting *Glavinich v. Commonwealth Land Title Ins. Co.* (1984) 163 Cal.App.3d 263, 272; see also *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230.) "The point of the rule disfavoring retroactivity is to avoid the unfairness that attends changing the law after action has been taken in justifiable reliance on the former law. [Citation.]" (*Mahon v. Safeco Title Ins. Co.* (1988) 199 Cal.App.3d 616, 620-621.)

In this instance, Ordinance number 3441, made effective immediately upon its adoption on January 19, 2010, contains no statement to the effect that it is to be applied retroactively. Likewise, neither of the two ordinances extending the duration of the moratorium (Ordinance numbers 3445 and 3454) indicates that the Dispensary moratorium is to be applied retroactively to a date prior to January 19, 2010.[25] And there

---

[25] Appellants' Dispensary operation is, however, expressly mentioned in the declaration section of Ordinance number 3441: ". . . because a significant portion of Monterey County has prohibited or heavily regulated medical marijuana dispensaries, there is a substantially increased likelihood that establishments, in addition to MyCaregiver, Inc., will seek to locate in Monterey." In addition, both of the ordinances extending the moratorium refer "to the City's one illegal medical marijuana dispensary," which is presumably the one that was operated by appellants.

is nothing from which we may infer that the City Council intended the moratorium to apply retroactively. We conclude that the presumption that the ordinance only operates prospectively applies in this instance. (*Evangelatos*, *supra*, 44 Cal.3d at p. 1209.)

But noting that the moratorium did not apply retroactively does not end our analysis. In the analogous area of permitting, where "a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit. [Citations.] Once a landowner has secured a vested right the government may not, by virtue of a change in the zoning laws, prohibit construction authorized by the permit upon which he relied." (*Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785, 791 (*Avco*).) In *Avco*, the court rejected the developer's argument that it acquired vested rights to a building permit because it had subdivided and graded property and expended sums for storm drains, culverts and street improvements; it concluded that "neither the existence of a particular zoning nor work undertaken pursuant to governmental approvals preparatory to construction of buildings can form the basis of a vested right to build a structure which does not comply with the laws applicable at the time a building permit is issued." (*Id.* at p. 793; see also *Autopsy/Post Services, Inc. v. City of Los Angeles* (2005) 129 Cal.App.4th 521, 527-529 (*Autopsy/Post Services*) [expenditure of funds to buy property and renovation of building insufficient to create vested right to building permit].)

Here, appellants failed to disclose to Monterey in the application for a business license or in response to a follow-up inquiry that they intended to operate a Dispensary. (See *Autopsy/Post Services, supra*, 129 Cal.App.4th at pp. 524, 527 [owner failed to disclose in building permit applications its intent to use property to perform autopsies]; *Avco, supra*, 17 Cal.3d at p. 794 [before date statute's requirements became effective, developer failed to apply to county for building permits or even to disclose "elementary details" concerning buildings].) And, as we have discussed, any use of the premises as a

Dispensary prior to January 19, 2010, was not a permissible use under the pre-moratorium City Code, so it cannot be said that appellants obtained any vested rights to operate a Dispensary when such use constituted a nuisance per se. (See *Acker v. Baldwin* (1941) 18 Cal.2d 341, 346 ["[n]o vested right to violate an ordinance may be acquired by continued violations"].)

In *Kruse*, *supra*, 177 Cal.App.4th 1153, Claremont dismissed the defendants' administrative appeal of the denial of their business license and permit applications based upon a subsequently enacted citywide moratorium against the establishment of Dispensaries. (*Id.* at p. 1178.) The defendants argued that this dismissal was a violation of their due process rights. (*Ibid.*) The court disagreed: "[Claremont's] reliance on the moratorium as the basis for dismissing defendants' appeal did not deprive defendants of any vested right. At the time the moratorium was enacted, defendants' applications for a business license and permit had already been denied. The trial court found that defendants did not incur substantial expenses prior to the denial of their applications, and substantial evidence supports that finding. After [Claremont] denied defendants' applications for a business license and permit, and after [Claremont] representatives told defendants that their proposed use would not be permitted, defendants commenced operating a medical marijuana dispensary without a license or permit, in violation of [Claremont's] municipal code. That violation was the subject of the injunction issued by the trial court. Neither the issuance of the injunction nor the dismissal of defendants' administrative appeal deprived defendants of any vested right." (*Id.* at pp. 1178-1179.)

Similarly, under the circumstances presented here, application of the City's moratorium to appellants' preexisting but unlawful Dispensary operation was proper and did not deprive appellants of any vested right. (*Kruse*, *supra*, 177 Cal.App.4th at pp. 1178-1179.) The trial court, in applying the City's moratorium to find that

34

appellants' use of the premises constituted a nuisance per se, correctly granted summary judgment.[26]

### D. *Claim that City Code Is Discriminatory As Applied*

As a final contention, appellants assert that the City Code, as applied here by Monterey, was "unreasonable, arbitrary and therefore discriminatory." They argue in a most cursory fashion that "[g]iven the broad use classifications set forth in the City Code, and the stated purposes and activities of MyCaregiver that easily fit the classifications, . . . the City is discriminating against a lawful organization for no valid reason."

Appellants fail to develop their "discriminatory as-applied" argument beyond the very general statement quoted above. "We are not bound to develop appellants' arguments for them." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.) We therefore need not consider undeveloped challenges. (*Ibid.*; see *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 [absence of legal argument and citation to authorities in support of contention results in its forfeiture].) Even were we to consider the merits of appellants' claim, it nonetheless fails.

Our high court has noted that " '[i]t is well settled that a municipality may divide land into districts and prescribe regulations governing the uses permitted therein, and that zoning ordinances, when reasonable in object and not arbitrary in operation, constitute a justifiable exercise of police power.' [Citations.]" (*Hernandez v. City of Hanford* (2007)

---

[26] Because we have concluded that Monterey established that appellants' operation of a Dispensary on the premises was in violation of the City Code and also in violation of the moratorium (Ordinance number 3441 and its successors) and thus constituted a public nuisance per se entitling the City to injunctive relief, we need not address whether injunctive relief was also proper based upon appellants' failure to obtain a business license. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5 [appellate courts will not address issues whose resolution is unnecessary to disposition of appeal].)

41 Cal.4th 279, 296; see also *Wilkins v. San Bernardino* (1946) 29 Cal.2d 332, 337.) The City Code here set forth 50 commercial use classifications potentially available for property located in a C-2 District. The mere fact that a Dispensary was not included as one of those specified use classifications does not render the City Code discriminatory. Nor does the fact that the Deputy City Manager made the determination that a Dispensary was not within any of those specified use classifications mean that the City Code was discriminatory as applied to appellants. As we have discussed (see pt. V.B.3, *ante*), in light of the unusual, if not unique, characteristics of a Dispensary, such a use of property does not fall within any of the specific commercial use classifications identified in the City Code for C-2 District property, and the Deputy City Manager's conclusion was therefore reasonable. Thus, the central premise underlying appellants' challenge—that their Dispensary operation was a use of property "that easily fit the [specified commercial use] classifications"—is insupportable. We therefore reject appellants' claim that the City Code, as applied to their use of the premises, was "unreasonable, arbitrary and therefore discriminatory."

DISPOSITION

The judgment is affirmed.

_____
                          Márquez, J.

WE CONCUR:

_____
  Premo, Acting P.J.

_____
  Mihara, J.

Filed 4/25/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF MONTEREY, | H036475 |
| | (Monterey County |
| Plaintiff and Respondent, | Super. Ct. No. M103860) |
| v. | |
| JNONRICO CARRNSHIMBA et al., | |
| Defendant and Respondent. | |

BY THE COURT:

The opinion which was filed on March 27, 2013, is certified for publication.

_____

Marquez, J.

38

_____

Premo, Acting P.J.

_____

Mihara, J.

The written opinion which was filed on March 27, 2013, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is therefore ordered that the opinion be published in the official reports.

Dated: _____        _____

Premo, Acting P.J.

39

| | |
|---|---|
| Trial Court: | Monterey County Superior Court No.: M103860 |
| Trial Judge: | The Honorable Lydia Villarreal |
| Attorney for Defendant and Appellant Jhonrico Carrnshimba et al.: | Richard Rosen Jeanine G. Strong |
| Attorneys for Plaintiff and Respondent City of Monterey: | Jeffrey V. Dunn Best Best & Krieger |

City of Monterey v. Carrnshimba, et al.

H036475