**CREEDON, Housing Expediter, v. LUNDE et ux.**

No. 1888.

United States District Court
W. D. Washington, N. D.

Nov. 22, 1947.

John E. Hedrick, C. E. Knowlton, Jr., and Roy C. Fox, Seattle, Wash., attorneys for plaintiff.

Warren Hardy, Seattle, Wash., Attorney for defendant.

George Olson, Seattle, Wash., attorney for defendants.

BLACK, District Judge.

Frank R. Creedon, Housing Expediter, seeks an injunction, first temporary and then permanent, restraining the defendants from demanding or receiving rent in excess of the maximum legal rent under

the Rent Control Act, 50 U.S.C.A.Appendix, § 901 et seq.; and, further, ultimately for an order requiring the defendants to tender back to the tenants any excess rents received.

This action is against Alfred Lunde and his wife as owners and managers of premises at 1420 Fourth Avenue West in this city, commonly known as the Virgina Lee. The plaintiff claims that said premises are and have been known as the Virginia Lee Apartments. The defendants contend that said premises are and have been known as the Virginia Lee Hotel.

The matter is before me now for a preliminary or temporary injunction. The Court has had presented to it certain affidavits for and against the application, and, in addition, has received far more evidence from far more witnesses than is usually the case in connection merely with an application for a temporary injunction. The Court has further had the advantage of a view of the premises in the company of counsel for both plaintiff and defendants and with the defendants themselves present.

Under the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq., the term "controlled housing accommodations" does not include among other things the following, "those housing accommodations, in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service; or any motor court, or any part thereof; or any tourist home serving transient guests exclusively, or any part thereof." Other exceptions to the controlled housing accommodations under the law include accommodations completed on or after February 1, 1947.

The affidavit of Mr. Lunde, to a degree, states an important issue in this preliminary consideration. His statement is in the following language: "That briefly speaking the entire case of the plaintiff herein is based upon an arbitrary assumption by plaintiff and by the members of plaintiff's staff that the premises involved in this matter constitute an apartment house, when in truth and in fact said premises are now a hotel."

What is a hotel and what is an apartment house can be troublesome. For instance, according to Webster's New International Dictionary, a hotel is defined as follows: "A house for entertaining strangers or travelers; an inn, especially one of the better class."

An apartment house in such dictionary is defined as follows: "A building comprising a number of suites designed for separate housekeeping tenements, but having conveniences such as heat, light, elevator service, etc., furnished in common."

I think it will be recognized that such definitions are not very helpful to me.

The statements of American Jurisprudence and of Corpus Juris Secundum are rather in accord generally. Under the title of "Inkeepers," American Jurisprudence, Vol. 28, under the heading of "Definitions and Distinctions," beginning at page 538, has the following to say:

"Section 4. *Inn or Hotel.*—An inn has been variously defined as a house which is held out to the public by the proprietor thereof as a place where transient persons who come in a fit condition will be received and entertained as guests for compensation; as a public house of entertainment for all who choose to visit it; as a house where a traveler is furnished with everything which he has occasion for while on his way; and as a place where all who come are received as guests without any previous agreement as to the duration of their stay or as to the terms of their entertainment. A hotel has been similarly defined, the terms 'inn' and 'hotel' being generally regarded in this respect as practically synonymous. The proprietor of such a place is an innkeeper or hotelkeeper."

"The mere fact that boarding or lodging accommodations are furnished at an institution which is operated primarily for another purpose does not constitute it an inn or hotel. * * *

"In the early days and under primitive conditions it was necessary, in order to

bring a place within the legal definition of an inn and to charge the keeper thereof with liability as such, that lodging, food, drink, and stabling should be furnished to travelers. Circumstances and changes in modes of life, travel, and transportation have affected and modified the character of hotels and inns and consequently the definitions thereof. * * * "

Under Section 6 we find this: "Section 6. *Inn, Hotel, and Tavern Distinguished.* —It is generally held that the term 'hotel' is snyonymous with 'inn,' that the legal definition of each is practically the same, or that 'hotel' is the modern name for establishments formerly called 'inns' or 'taverns.' It follows that a hotel-keeper and an innkeeper occupy the same status in the law. However, a hotel is sometimes distinguished from an inn by its superior style and pretensions, that is, an inn of the better class is sometimes called a hotel. In some jurisdictions, the word 'tavern' is considered synonymous with 'hotel' and 'inn'." Under Section 9, entitled "Apartment Houses and Hotels," there is found this language: "There is a distinction between 'apartment houses' and 'apartment hotels',—so-called. An apartment house may be generally defined as a building arranged in several suites of connecting rooms, each suite designed for independent housekeeping, but with certain mechanical conveniences such as heat, light, or elevator service furnished in common to all the occupants of the building. An apartment hotel is generally understood to apply to buildings which contain nonhousekeeping apartments, wherein no cooking facilities are provided and the proprietor maintains a restaurant for the convenience of his guests and furnishes other services to them. An apartment house is clearly not a hotel, each apartment therein being regarded as a separate dwelling of which its occupant is the tenant. Also, the fact that a particular establishment is called an apartment hotel and operates under the plan above outlined does not in all instances bring it within the definitions of an inn or hotel, each case depending upon its own circumstances."

Under the general language or definition, clearly, the premises known as the Virginia Lee do not constitute a hotel. Under the ordinary viewpoint, premises where there is found no hotel register, no transient guests, no rooms or accommodations for the night, is not deemed a hotel. Ordinarily, when we speak of a hotel we expect to find an establishment that caters substantially to the transient traveler. In fact, the origin of the term "hotel" was one that applied to hospitality to a traveler. It is generally expected in a modern hotel or in a modest hotel in these modern times that we find a lobby, a hotel register and some daily accommodations available as a place for safekeeping of those valuables of the hotel guest which he or she is afraid to keep in the room or accommodation.

This place was not licensed as a hotel. It had no hotel register. It had no place for the safekeeping of valuables. It had no room designated as a lobby. There is some contention that a portion of what might be deemed the apartment of the defendants was available as a lobby. Such availability, however, under the evidence was limited, and from my view of the premises, the room was designated "office," which is not at all incompatible with an apartment house. If I were not confronted with the Rent Control Act, I could say with much ease that the Virginia Lee is an apartment house. There were posted at least three printed cards, one of which I have before me, which is entitled "Apartment Regulations. * * * Rent must be paid in advance. "Tenants are required by state law to give thirty days notice in writing prior to the expiration of a monthly period before vacating apartment." There is not a syllable of evidence that anyone ever rented any unit other than by the month.

So, unless the law makes such an apartment house a hotel, I must of necessity say what these apartment regulations admit, that it is an apartment house and those who occupy apartments are not guests but are tenants.

Under the evidence, some of the apartments were unfurnished.

Under the defendants' evidence, everybody there was provided with bellboy service, maid service, daily linen, laundry and the various accommodations that one would expect to find in a hotel. The evidence discloses that the bellboy is the defendant husband, who is also the manager of the premises and who is also the janitor, and who also says that he is a supplemental maid for thirty tenants, with one or more in the family or group occupying any particular unit. The maid is the wife.

The Court has seen the laundry accommodations. I think it would be clear that if the thirty units were requiring what is commonly known as hotel service, they would be sadly disappointed.

Very few except those who came in since the rent was raised say they have been getting the hotel service which the defendants say they supplied. Some of them have explained that it was offered to them, but they did not wish it. It should be clear, however, that if the tenants generally required the services, a very radicial change would have to be made in the management and the personnel to supply it.

I went into the premises. I am satisfied that if anyone else had been taken to the premises without having been told there was a controversy and had been asked what the premises constituted, that they unhesitatingly would have said that such was a rather old apartment house with inadequate service for a portion of the units.

The law, however, makes a hotel something different than ordinary usage has made it.

A hotel under the Act is this: "Those housing accommodations, in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service"

Certainly, at this stage of the proceedings I would not be justified in finding that what all of tenants were notified was an apartment by the notices still posted is and has been a hotel. It is difficult for me to see how Mr. and Mrs. Lunde could honestly be under the opinion that this establishment was commonly known as a hotel in the vicinity. It had never been listed in the telephone directory as other than an apartment house.

If this action were merely between the Housing Expediter and Mr. and Mrs. Lunde, I would be very slow to grant the Housing Expediter relief. Certainly, when this document was returned to Mr. and Mrs. Lunde with a stamp on it "Received," there should have been a warning that the place was not decontrolled until formal action was taken. As far as the Expediter's office is concerned, apparently, it did just as little as possible to warn Mr. and Mrs. Lunde.

However, the issue here is ultimately between the public and the defendants and between the tenants and the defendants. Some tenants are willing to pay more rent, but the law says a tenant cannot facilitate inflation by bidding higher for premises than the owner ought to charge.

The Court is not privileged to punish innocent tenants nor those who might be seeking accommodations in this congested area merely because the Housing Expediter has not taken the precautions to properly warn Mr. and Mrs. Lunde when the Housing Expediter's office should have known that they needed warning.

▆ I will issue the temporary injunction because neither under general usage nor under the act as I see it is the establishment a hotel.

At least by September 17 Mr. and Mrs. Lunde were warned that the Housing Expediter was not conceding that the premises were necessarily a hotel, and by about September 30 that warning was more strongly brought home to him and her.

This is not a final decision. The case may come on in due course on its merits for trial, but until the further order of the Court the defendants will be enjoined from charging rents in excess of the law as applicable to an apartment house.