230 A.2d 875.

SEAL BUILDERS AND REALTY CORPORATION *et al. vs.* CITY OF PAWTUCKET BOARD OF APPEALS.

JUNE 12, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Paolino, J. The petitioners brought this petition for certiorari to review the action of the respondent board revoking a building permit issued to them by the building inspector of the city of Pawtucket. In compliance with the writ the board has certified the pertinent records to this court.

The petitioners are Seal Builders and Realty Corporation and Juliette Giard, hereinafter sometimes referred to as the builder and the owner, respectively.

On December 27, 1965, the builder applied for and received from the building inspector a permit to build a 16-unit apartment structure on a parcel of land owned by Juliette Giard in a residence B district. Subsequently, prior to the commencement of any work, in accordance with sec. 105.5 of the city's building code, the builder filed an amended application in which the owner joined wherein she made affidavit that she had authorized the builder to file the December 27, 1965, application and to do the work proposed

therein. The amended application was signed and executed by the parties in February 1966.

On January 26, 1966, the owners of certain neighboring properties filed an appeal from the action of the building inspector with the board of appeals pursuant to the provisions of G. L. 1956, §45-24-16, and sec. 111 of the Pawtucket Building Code. They challenged the validity of the permit on various grounds and sought a reversal of the action of the building inspector and a revocation of the permit.

At the hearing before the board, remonstrants pointed out that "all of Chapter 3 of the revised ordinances of the City of Pawtucket, 1953" had been expressly repealed by sec. 115 (page 1-25) of the Pawtucket Building Code, which was approved on September 9, 1965. They contended then, as they do now, that in the circumstances there existed no appropriate standards for establishing a definition of an apartment house and, therefore, the building inspector erred in issuing the permit in question.

The pertinent ordinances are the following.

Section 26.6(3) of the zoning ordinance, which appears in chap. 26 of The Revised Ordinances of the City of Pawtucket, 1953, insofar as pertinent here, provides that:

> "An apartment house * * * as defined in chapter 3 of this Revision relative to buildings"

is a permitted use in a residence B district.

Chapter 3, sec. 3.1(3), defines an apartment house as follows:

> "*Apartment house.* Any building or part thereof designed or occupied as the home or residence of five or more families or households, with living and sleeping rooms arranged for each family or household and having a common heating system."

After hearing the remonstrants' appeal, the board, by a majority vote, rendered a decision revoking the permit issued

342

by the building inspector and ordering petitioners to cease any work commenced under the permit. They based their decision squarely on the ground that sec. 26.6 restricts apartment buildings to those defined in chap. 3, and since chap. 3 has been repealed, there are no standards to guide the building inspector in determining what is an apartment house.

The narrow issue presented for our determination is whether the present ordinance contains a definition of what constitutes an apartment house.

The petitioners contend, and we believe correctly so, that the repeal of chap. 3 of the Pawtucket Revised Ordinances, 1953, does not result in leaving the building inspector without appropriate standards in determining what is an apartment house within the meaning of sec. 26.6(3) of the zoning ordinance. Initially we point out that sec. 115 of the Pawtucket Building Code, which was approved on September 9, 1965, by repealing chap. 3, merely removes the definitional provisions of sec. 26.6(3); it does not alter the status of an "apartment house" as a permitted use in a residence B district. In our opinion there is no merit in remonstrants' contention that, as a result of the repeal of chap. 3, the ordinance contains no standards to guide the building inspector. An apartment house is generally known as a building containing multifamily units. 3 Yokley, Zoning Law and Practice §28-4, p. 259 (3d ed. 1967). Indeed, sec. 201 of the Pawtucket Building Code, relating to definitions, in defining the word "Apartment" contains the legend "See Dwelling Unit." Section 201 states that a dwelling unit

> "Means any room or group of rooms forming a single and separate habitable unit with facilities which are used or intended to be used for living, sleeping, regular cooking and eating."

Moreover, and what is probably more significant, sec. 201 also refers to "apartment house" in defining a multifamily

house; multifamily house is defined in the following language:

"Means a building or portion thereof containing three or more dwelling units; including tenement house, apartment house, flat."

For other definitions of "apartment house" see *Creedon* v. *Lunde,* D.C.W.D. Wash. 90 F. Supp. 119, 121; *Jernigan* v. *Capps,* 187 Va. 73, 80, 45 S.E.2d 886, 890; *Konick* v. *Champneys,* 108 Wash. 35, 40, 183 P. 75, 77.

In our opinion the code definitions of "Apartment," "Dwelling Unit" and "Multifamily House" provided appropriate standards to guide the building inspector in determining what was an apartment house within the contemplation of sec. 26.6(3), notwithstanding the repeal of chap. 3 by the Pawtucket Building Code. Inasmuch as an apartment house remained a permitted use under the new code in a residence B district at the time petitioners requested and were granted the building permit in question, we hold that the majority decision of the board of review is in error and we order that it be reversed. On this record, the petitioners were entitled to the permit they sought. See 2 Rathkopf, The Law of Zoning and Planning, chap. 55, §3 (3d ed.), entitled "Applicant's Right to a Permit" where the author discusses this problem as follows:

"So long as the application is in order and the proposed use of the property complies with applicable municipal ordinances or, where although not complying, the premises has a vested nonconforming status, the applicant is entitled to a permit, and it is the duty of the administrative officer to issue one to him.

"The issuing of permits has often been held to be an administrative or ministerial act and the person charged with the duty of issuing permits must follow literally the provisions of the ordinance. * * *

"A permit for a legal use may not be refused for reasons extraneous to the zoning ordinance; an administrative officer charged with the duty of examining

applications for and issuing permits is bound by the restrictions of the ordinance and may not refuse a permit for matters not within the scope of his discretion."

In view of our conclusion that the building inspector did not err in issuing the permit, we do not deem it necessary to discuss the other contentions made by the parties.

The petition for certiorari is granted, the board's decision is quashed, and the records certified to this court are returned to the board for further proceedings in accordance with this opinion.

*Edmund A. Baldi,* for petitioners.

*Victor J. Beretta,* City Solicitor, *Gerald J. Pouliot,* Assistant City Solicitor, for respondent.