Filed 11/15/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B300960 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC624350) |
| v. | |
| VENICE SUITES, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Teresa A. Beaudet, Judge. Affirmed.

Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Scott Marcus, Chief Senior Assistant City Attorney, Blithe S. Bock and Michael M. Walsh, Deputy City Attorneys for Plaintiff and Appellant.

Jeffer Mangels Butler & Mitchell, Benjamin M. Reznik, Matthew D. Hinks and Lara Leitner for Defendants and Respondents.

———————————————

The People of the State of California brought suit against Venice Suites, LLC and Carl Lambert (collectively, Venice Suites) for violation of the Los Angeles Municipal Code (LAMC) and for public nuisance, among other causes of action. Venice Suites owns and operates an "Apartment House" as defined under LAMC section 12.03.[1] The People allege Venice Suites illegally operates a hotel or transient occupancy residential structure (TORS), defined below, in a building only permitted to operate as an Apartment House for long-term tenants and not overnight guests or transient renters. Further, the Apartment House is located in a R3 Multiple Dwelling residential zone, which disallows short-term occupancy. The trial court granted summary adjudication for Venice Suites on the two causes of action described above, finding the LAMC did not prohibit short-term occupancy of Apartment Houses in an R3 zone. The People appealed after they voluntarily dismissed the remaining claims. We affirm.

## FACTS

The material facts of this case are undisputed. The subject property, a 32-unit building, is located at 417 Ocean Front Walk (417 OFW) in an area zoned for R3 Multiple Dwellings. The building was developed in 1921 in the City of Venice, which was later consolidated with the City of Los Angeles (City). The City issued a certificate of occupancy on June 10, 1966, permitting use of 417 OFW as a "Thirty Two – Unit Apartment

---

[1] LAMC section 12.03 defines an Apartment House as "A residential building designed or used for three or more dwelling units or a combination of three or more dwelling units and not more than five guest rooms or suites of rooms."

2

House. H Occupancy."  In 1966, "H-Occupancy" uses were associated with the following subgroups: subgroup H-2 was for "Apartment House" use, H-3 was for "Hotel" use, and H-4 was for "Apartment/hotel" use.

Lambert is the owner and corporate manager of Venice Suites, LLC.  Venice Suites, LLC purchased 417 OFW on September 14, 1999, when it housed a mixture of short-term occupants (those staying 30 days or less) and long-term occupants (those staying more than 30 days).  The 32 units in 417 OFW are subject to the City's Rent Stabilization Ordinance (RSO) and Venice Suites annually pays the RSO's registration renewal fee.  Additionally, Venice Suites has obtained annual Los Angeles tax registration certificates and has paid business taxes for "Hotel, apartment, etc." for 417 OFW.

After its purchase, Venice Suites began to renovate the property and paid relocation fees in compliance with the RSO to long-term tenants who wished to move.  There have been no evictions from 417 OFW by Venice Suites.  Since 2012, Venice Suites has rented the units at 417 OFW to members of the public on a short-term basis with no minimum stay requirement.

In 2014 and 2015, the City underwent a change of policy with regard to the regulation of short-term rentals; it did not change the law applicable to short-term rentals at that time, however.  On several occasions in mid–to–late 2014, the City moved to develop and adopt an ordinance to regulate short-term rentals and convened working groups to assist in establishing such an ordinance.  In 2018, after the summary judgment proceedings in this case were concluded, the City enacted the Home Sharing Ordinance, which addresses short-term rentals in

private homes.  There is no contention the Home Sharing Ordinance applies to 417 OFW.

In 2014, Lambert approached the City's planning department about entitlements to specifically permit short-term rentals at 417 OFW.  He was instructed to proceed with the planning department and California Coastal Commission for such entitlements.  As a result, Lambert submitted a Mello Act Determination of Affordable Units Application[2] for 417 OFW, stating he sought "conversion to transient occupancy residential." The planning department accepted the application to change 417 OFW "from an (E) 32-Unit Apartment Building to a 32-room transient occupancy residential bldg. in the Venice specific plan area and dual jurisdiction coastal zone."  That application was ultimately denied.

On January 26, 2015, the City issued a notice and order to comply, which asserted Venice Suites effected an "[i]llegal change of occupancy from 'R-2 Occupancy' residential occupancies primarily permanent in nature (apartments) to 'R-1 Occupancy' residential occupancies primarily transient in nature

---

[2]    Under the Mello Act, "[t]he conversion or demolition of existing residential dwelling units occupied by persons and families of low or moderate income . . . shall not be authorized unless provision has been made for the replacement of those dwelling units with units for persons and families of low or moderate income."  (Gov. Code, § 65590, subd. (b).)  The City must first determine "that replacement of all or any portion of the converted or demolished dwelling units is feasible . . . ."  (Gov. Code, § 65590, subd. (b).)  Once the City makes such a determination, then replacing dwelling units occupied by persons and families of low or moderate income is required.  (Gov. Code, § 65590, subd. (b).)

4

(hotel/motel) . . . ." The notice ordered Venice Suites to correct all violations by March 4, 2015.

On June 17, 2016, the Los Angeles City Attorney's Office filed a civil law enforcement action on behalf of the People against Venice Suites, seeking injunctive relief, equitable relief, and civil penalties for the use of 417 OFW as an illegal hotel or illegal TORS. The People alleged four causes of action: 1) violation of the LAMC, 2) public nuisance, 3) unfair competition under Business and Professions Code section 17200, et seq., and 4) false advertising practices under Business and Professions Code section 17500, et seq.

As to the first cause of action, the People alleged a violation of LAMC section 11.00, which provides: "In addition to any other remedy or penalty provided by this [Los Angeles Municipal] Code, any violation of any provision of this Code is declared to be a public nuisance and may be abated by the City or by the City Attorney on behalf of the people of the State of California as a nuisance by means of a restraining order, injunction or any other order or judgment in law or equity issued by a court of competent jurisdiction."

Specifically, the People alleged Venice Suites violated the following LAMC sections by operating 417 OFW as an illegal hotel or TORS: 12.10(A), which specifies the allowable uses in a R3 zone; 12.21(A)(1), which only allows the uses permitted in the applicable zone and after securing the requisite permits; 12.26(E) and 91.109.1, which require a certificate of occupancy to be issued before a building may be occupied; 91.8105.1, which requires a building permit be issued; and 91.8204, which prohibits changes to the use of a building unless it is made to comply with the LAMC. The People further alleged Venice Suites failed to comply

5

with an order issued pursuant to LAMC section 91.103.3. The second cause of action for public nuisance in violation of Civil Code sections 3479 and 3480 was predicated on the same violations of the LAMC as the first cause of action.

The parties filed cross-motions for summary judgment or summary adjudication, disputing whether Venice Suites violated the LAMC. The primary dispute involved whether short-term occupancy of an Apartment House located in an R3 zone is prohibited under the LAMC. The People interpreted the LAMC to exclude short-term occupancy of Apartment Houses, relying on provisions of the Zoning Code (LAMC, § 11.00, et seq.), the RSO (LAMC, § 151.00, et seq.), and the Transient Occupancy Tax Ordinance (TOT; LAMC, § 21.7.1, et seq.).

Venice Suites argued the Zoning Code controlled and did not regulate the length of occupancy in an Apartment House. Short-term rentals were permitted because none of the provisions relating to an Apartment House in the Zoning Code specified a length of occupancy. Neither did the relevant land use plans regulate length of occupancy for an Apartment House. Venice Suites cited to testimony to that effect from the persons designated by the People to be the most knowledgeable on the subject. Venice Suites also relied on a report issued by the City that concluded short-term rentals were not prohibited under the RSO.[3]

---

[3] Venice Suites does not argue the deposition testimony or the City's report are dispositive of the issue. The parties acknowledge a city's interpretation of an ambiguous portion of its own code "is entitled to deference," but the court independently reviews the meaning or application of the law. (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1091

6

The trial court granted Venice Suites's motion for summary adjudication as to the first and second causes of action for violation of the LAMC and public nuisance, and it denied both motions as to the third and fourth causes of action for unfair business practices and false advertising.

The People subsequently dismissed their third and fourth causes of action without prejudice and appealed the resulting judgment.

## DISCUSSION

### I.    Standard of Review

Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment or summary adjudication must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (*Id.* at subd. (p)(2).) On appeal from a grant of summary judgment, we employ the same standards as the trial court did and review the record de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

---

(*Carrnshimba*).) For purposes of this opinion, we conclude we need not rely on the City's interpretations of the LAMC.

7

Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542 (*Perry*); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854.) It is no longer called a "disfavored" remedy. Rather, it is "now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Perry*, at p. 542.)

## II.    The Issue Is Not Forfeited

As a threshold matter, Venice Suites urges this court to decline to reach the merits of the People's argument on appeal because the People's argument below was that the LAMC expressly prohibited short-term rentals of Apartment Houses, not that short-term rentals were impliedly prohibited under a permissive zoning scheme. We agree the People did not raise the issue of permissive zoning in their briefing below but we exercise our discretion to consider the issue on its merits.

"Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments. [Citation.] An argument or theory will . . . not be considered if it is raised for the first time on appeal. [Citation.] Specifically, in reviewing a summary judgment, the appellate court must consider only those facts before the trial court, disregarding any new allegations on appeal. [Citation.] Thus, possible theories that were not fully developed or factually presented to the trial court cannot create a 'triable issue' on appeal." (*American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281.) "A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do

8

so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." (*Ernst v. Searle* (1933) 218 Cal. 233, 240–241; *G & W Warren's, Inc. v. Dabney* (2017) 11 Cal.App.5th 565, 571 [where case was tried on theory that defendant was liable as surety under guaranty agreement, plaintiff was precluded from contending on appeal that defendant was liable as principal under purchase agreement].)

Nevertheless, a reviewing court may exercise its discretion to reach the merits of a newly raised issue in certain circumstances. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 195; *Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 914; 9 Witkin, Cal. Procedure (5th ed. 2020) Appeal § 414.) For example, an appellant may be permitted to change his or her theory when a question of law alone is presented on the facts appearing in the record. In that case, the opposing party is not required to defend for the first time on appeal against a new theory that contemplates a controverted factual situation. (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1459; 9 Witkin, Cal. Procedure (5th ed. 2020) Appeal § 415 [cases cited].)

Here, the trial court characterized the People's argument on summary judgment as follows: "In order to reach the conclusion that apartment houses cannot include short-term rentals, Plaintiff ties together the following defined terms from the [Los Angeles Municipal] Code thusly: i) an apartment house [as defined in the Zoning Code] consists of rental units [as defined in the RSO], ii) rental units in an apartment house may only be occupied by tenants [as defined in the RSO but not in the Zoning Code], iii) transients [as defined in the TOT] are different from tenants, and accordingly, iv) transients may not occupy

9

rental units in apartment houses." After the trial court issued its ruling, the People did not seek reconsideration or otherwise advise the court its characterization of their argument was wrong. Our own review of the People's summary judgment motion reveals the trial court accurately set out the People's argument.

By contrast, the People set forth several arguments on appeal. They first argue an R3 zone is residential in nature, and the common usage of the term apartment house provides context to the incomplete definition in the Zoning Code. They also contend the City operates under a permissive zoning scheme, where only expressly authorized uses are permitted while all other uses are prohibited. According to the People, the Zoning Code only expressly permits short-term occupancy in a TORS. An Apartment House contains the same physical characteristics as a TORS and becomes a TORS if it is occupied on a short-term basis. Because a TORS is not permitted for use in an R3 zone, an Apartment House may not be occupied on a short-term basis in an R3 zone. These arguments were not presented to the trial court. The People argue, however, the issues raised on appeal present pure questions of law which do not implicate any factual disputes. We agree the interpretation of the LAMC is a question of law which we decide de novo.

We are not persuaded by Venice Suites's contention that the People's permissive zoning argument raises factual issues not addressed below. In particular, Venice Suites contends the record was not developed as to the City Council's intent when it adopted the TORS definition in 1992. (Ord. No 167,689, Eff. 5/9/92.) The ascertainment of legislative intent is a legal question, not a factual one. (*Roussos v. Roussos* (2021) 60

10

Cal.App.5th 962, 973.) Venice Suites also asserts it was not provided the opportunity to argue whether it retained vested rights to continue the use of 417 OFW for short-term rentals because that argument was not implicated by the briefing below. Not so. In their combined cross-motion for summary judgment and opposition to the People's summary judgment motion, Venice Suites asserted their "vested rights to offer [short-term rentals] at the Property survived consolidation of Venice with Los Angeles." Venice Suites does not explain whether and how its vested rights argument would be different under a permissive zoning theory. Additionally, Venice Suites contends it was prevented from exploring the permissive zoning theory in discovery because the City did not take this position below. That discovery on the City's interpretation of the LAMC under a permissive zoning theory may have been conducted does not convert the question from a legal one to a factual one. None of Venice Suites's arguments prevent us from exercising our discretion to consider a legal question that does not involve controverted facts.

## III. The LAMC Does Not Regulate the Length of Occupancy in An Apartment House in a R3 Zone

To prevail on its cross-motion for summary judgment or summary adjudication, Venice Suites was required to show that one or more elements of the causes of action at issue could not be established. The People alleged Venice Suites converted 417 OFW into a de facto hotel or TORS despite its location in a R3 residential zone that does not authorize short-term rentals. This allegation forms the basis for the first and second causes of action. The trial court found "417 OFW is an apartment house, and that renting units at 417 OFW on a short-term basis is not

11

prohibited by the [LAMC], nor does it change the use of 417 OFW such that it is instead a hotel or a TORS [footnote omitted]."

We agree with the trial court that the LAMC does not regulate the length of occupancy in Apartment Houses in R3 zones. The material facts in this case are undisputed: 417 OFW is permitted to operate as an Apartment House and it is located within an R3 Multiple Dwelling zone. The parties' dispute lies in whether an Apartment House in an R3 zone may be used for short-term occupancies of 30 days or less. We must look to the Zoning Code to determine what uses are authorized for an Apartment House in an R3 zone because the Zoning Code sets forth a "comprehensive plan" for the use of buildings in the City for residential purposes. As we have set out in footnote 1, the Zoning Code defines an Apartment House as a "residential building" that contains a certain combination of dwelling units, guest rooms or suites of rooms. A "residential building" is used for human habitation without regard to length of occupancy and describes every type of building at issue, including an apartment hotel, an Apartment House, a TORS, and a hotel. In short, none of the relevant definitions specify a length of occupancy. (LAMC, § 12.03.) Neither does the list of permitted uses in an R3 zone, which includes Apartment Houses, specify a length of occupancy. (LAMC, § 12.10.) The plain language of the Zoning Code tells us an Apartment House is permitted to operate in an R3 zone so long as it meets the physical characteristics of an Apartment House and it is used for human habitation. There is no dispute 417 OFW meets both of those requirements. The People cannot show Venice Suites has violated the LAMC by renting it on a short-term basis because the LAMC does not regulate the length of occupancy for an Apartment House in an R3 zone. The trial

12

court properly granted summary adjudication as to the first and second causes of action.

The People challenge this conclusion on several grounds. First, they contend the common use of the term apartment house informs the definition provided by the Zoning Code, which is incomplete because it only sets forth a physical description. Second, the People apply a permissive zoning scheme to argue an Apartment House is converted to a TORS when it is rented on a short-term basis and a TORS is not an allowable use in an R3 zone. Third, the People repeat their argument below, relying on disparate provisions of the Zoning Code, RSO, and TOT to contend transients may not occupy Apartment Houses. We are not persuaded.

## A. Principles of Statutory Interpretation

The proper interpretation of a statute is a question of law we review de novo. (*Carrnshimba, supra,* 215 Cal.App.4th at p. 1081.) "Courts interpret municipal ordinances in the same manner and pursuant to the same rules applicable to the interpretation of statutes." (*Id.* at p. 1087.) " ' " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) " '[W]e look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]" [Citation.] That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in

13

the context of the statutory framework as a whole." ' " (*People v. Arroyo* (2016) 62 Cal.4th 589, 595.)

If the statutory language is susceptible of more than one reasonable interpretation, the courts look to "extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1008.) We interpret the statute using " 'reason, practicality, and common sense to the language at hand.' [Citation.]" (*Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 583.) We must give the words of the statute a workable and reasonable interpretation keeping in mind the consequences that will flow from our interpretation. (*Watkins v. County of Alameda* (2009) 177 Cal.App.4th 320, 336.)

**B. Relevant Provisions of the LAMC**

The ordinances relevant to the parties' arguments are as follows:

**1. The Zoning Code**

"The purpose of [the Zoning Code] is to consolidate and coordinate all existing zoning regulations and provisions into one comprehensive zoning plan in order to designate, regulate and restrict the location and use of buildings, structures and land, for agriculture, residence, commerce, trade, industry or other purposes . . . ." (LAMC, § 12.02.)

The Zoning Code provides the following definitions under LAMC section 12.03:

14

**APARTMENT.** Same as dwelling unit. (Added by Ord. No. 107,884, Eff. 9/23/56.)

**APARTMENT HOTEL.** A residential building designed or used for both two or more dwelling units and six or more guest rooms or suites of rooms. (Amended by Ord. No. 107,884, Eff. 9/23/56.)

**APARTMENT HOUSE.** A residential building designed or used for three or more dwelling units or a combination of three or more dwelling units and not more than five guest rooms or suites of rooms. (Amended by Ord. No. 107,884, Eff. 9/23/56.)

**DWELLING UNIT**. A group of two or more rooms, one of which is a kitchen, designed for occupancy by one family for living and sleeping purposes. (Amended by Ord. No. 107,884, Eff. 9/23/56.)

**GUEST ROOM.** Any habitable room except a kitchen, designed or used for occupancy by one or more persons and not in a dwelling unit. (Added by Ord. No. 107,884, Eff. 9/23/56.)

**HOTEL.** A residential building designated or used for or containing six or more guest rooms, or suites of rooms, which may also contain not more than one dwelling unit, but not including any institution in which human beings are housed or detained under legal restraint. (Amended by Ord. No. 138,685, Eff. 7/10/69.)

**RESIDENTIAL BUILDING.** A building or portion thereof designed or used for human habitation. (Added by Ord. No. 107,884, Eff. 9/23/56.)

**SUITE**.  A group of habitable rooms designed as a unit, and occupied by only one family, but not including a kitchen or other facilities for the preparation of food, with entrances and exits which are common to all rooms comprising the suite.  (Added by Ord. No. 138,685, Eff. 7/10/69.)

**TENANT.**  A person who rents, leases or sub-leases, through either a written or oral agreement, residential real property from another.  (Added by Ord. No. 151,432, Eff. 10/12/78.)

**TRANSIENT OCCUPANCY RESIDENTIAL STRUCTURE** [TORS].  A residential building designed or used for one or more dwelling units or a combination of three or more dwelling units and not more than five guest rooms or suites of rooms wherein occupancy, by any person by reason of concession, permit, right of access, license, or other agreement is for a period of 30 consecutive calendar days or less, counting portions of calendar days as full days. (Added by Ord. No 167,689, Eff. 5/9/92.)

LAMC section 12.10 lists the uses permitted in a R3 Multiple Dwelling Zone, including Apartment Houses, any use permitted in the "R2" two–family zone, group dwellings, multiple dwellings, boarding houses, rooming houses or light housekeeping houses, child care facilities for not more than 20 children, senior independent housing, and assisted living care housing.  (LAMC, § 12.10(A).)  LAMC section 12.10 further specifies that all uses not expressly permitted are prohibited.

## 2. The RSO

The RSO was enacted "to regulate rents so as to safeguard tenants from excessive rent increases, while at the same time providing landlords with just and reasonable returns from their

rental units." (LAMC, § 151.01.)  The RSO specifies that if a term is not defined within the RSO, the term "shall be construed as defined in Sections 12.03 [in the Zoning Code] and 152.02 of this Code . . . ."  (LAMC, § 151.02.)

> **Rental Units.**  (Amended by Ord. No. 157,385, Eff. 1/24/83.)  All dwelling units, efficiency dwelling units, guest rooms, and suites, as defined in Section 12.03 of this Code, and all housing accommodations . . . in the City of Los Angeles, rented or offered for rent for living or dwelling purposes, the land and buildings appurtenant thereto, and all housing services, privileges, furnishings and facilities supplied in connection with the use or occupancy thereof, including garage and parking facilities.  (Sentence Amended by Ord. No. 170,445, Eff. 5/6/95, Oper. 7/5/95.) . . . The term shall not include:
> [¶] . . . [¶]
>> 2.  (Amended by Ord. No. 176,472, Eff. 3/26/05.) Housing accommodations in hotels, motels, inns, tourist homes and boarding and rooming houses, provided that at such time as an accommodation has been occupied as the primary residence of one or more of the same tenants for any period more than 30 days such accommodation shall become a rental unit subject to the provisions of this chapter.

> **Tenant.**  A tenant, subtenant, lessee, sublessee or any other person entitled to use or occupancy of a rental unit. (LAMC, § 151.02.)

### 3.  The TOT

The Uniform Transient Occupancy Tax Ordinance of The City of Los Angeles (TOT) sets forth the tax rate imposed on a "transient" for occupancy of a hotel room.  (See LAMC, § 21.7.3.)

17

It provides the following pertinent definitions in LAMC section 21.7.2:

> **(b) Hotel. "Hotel"** means any structure, or any portion of any structure, which is occupied or intended or designed for occupancy by transients for dwelling, lodging or sleeping purposes, and includes any hotel, inn, tourist home or house, . . . apartment house, dormitory, public or private club, or other similar structure or portion thereof, . . . are occupied or intended or designed for occupancy by transients for dwelling, lodging or sleeping purposes. (Amended by Ord. No. 185,931, Eff. 7/1/19.)

> **(d) Transient. (Amended by Ord. No. 164,961, Eff. 7/24/89, Oper. 8/1/89.) "Transient"** means: [¶] . . . [¶] 2. Any individual who personally exercises occupancy or is entitled to occupancy by reason of concession, permit, right of access, license or other agreement, for a period of 30 consecutive calendar days or less, counting portions of calendar days as full days. Any such individual so occupying space in a hotel shall be deemed to be a transient until the period of 30 days has expired unless there is an agreement in writing between the operator and the occupant providing for a longer period of occupancy.

## C. The Zoning Code's Definition of Apartment House Controls Over the Dictionary Definition

Because the definition of Apartment House does not contain a length of occupancy requirement, the People argue the definition provided in LAMC section 12.03 is incomplete and the common usage of the term apartment house provides the necessary context to show an Apartment House is intended for long-term occupancy.

We may not read a minimum length of occupancy into the definition of Apartment House where one is not specified, however.  LAMC section 11.01(b) provides, "Words and phrases used in this Code and not *specifically defined* shall be construed according to the context and approved usage of the language. [Italics added.]"  Further, LAMC section 11.01(c) adopts "[t]he provisions of Sections 13 and 1645 of the Civil Code of the State of California . . . in the interpretation of words and phrases, unless otherwise provided herein."[4]  Civil Code section 13 advises, "Words and phrases are construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, or *are defined in the succeeding section, are to be construed according to such peculiar and appropriate meaning or definition.* [Italics added.]"

These provisions of the LAMC and the Civil Code constrain our ability to extend the definition of Apartment House beyond what is set forth in the Zoning Code.  The court's function "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted. . . ."  (Code Civ. Proc., § 1858; *Busker v. Wabtec Corp* (2021) 11 Cal.5th 1147; *Guardianship of Elan E.* (2000) 85 Cal.App.4th 998, 1001.)[5]

---

[4]  Civil Code section 1645 provides "[t]echnical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense."  It does not apply here.

[5]  In further support of their argument that an Apartment House is intended for long-term occupancy, the People indicate in

Even if we were free to adopt the common usage of the term, as the People urge us to do, we are not convinced an Apartment House is restricted to long-term occupancy. The People rely on dictionary definitions and federal caselaw discussing the term to support their argument. (Random House Unabridged Dictionary <https://www.dictionary.com/browse/apartment-house> [as of Nov. 15, 2021]; Editors of Encyclopedia Britannica, "Apartment house" (Aug. 21, 2014) <https://www.britannica.com/technology/apartment-house> [as of Nov. 15, 2021]; *Creedon v. Lunde* (W.D. WA 1947) 90 F.Supp. 119, 120–121.)

However, our own research shows the definition of apartment house around the time the ordinance was enacted did not restrict it to only long-term occupancy. In *Edwards v. City of Los Angeles* (1941) 48 Cal.App.2d 62, 69, for example, the court discussed a provision in the Civil Code which classified a "furnished apartment house keeper" in a category that included "innkeeper" and "hotel–keeper." (See also *Village of Euclid v. Ambler Realty Co.* (1926) 272 U.S. 365 [categorizing hotels and apartment houses together].)

their reply brief that the definition of apartment house contained in the California Building Code includes "primarily permanent" occupants. (24 Cal. Code of Reg., § 310.3.) This definition is adopted by the Los Angeles Building Code (LAMC, § 91.101.1, et seq.). We find the argument irrelevant to the issue at hand. As shown above, the Zoning Code provides a definition for Apartment House and we may not disregard it to adopt a definition provided in a different section of the LAMC or in a state regulation. Accordingly, we deny the People's supplemental request for judicial notice of LAMC sections 91.201 and 91.202, filed April 26, 2021.

20

Likewise, the dictionary definitions for apartment house do not indicate a required length of occupancy. For example, the 1961 edition of Webster's Third New International Dictionary defined "apartment building or apartment house" as "a building containing a number of separate residential units and usu. having conveniences (as heat and elevators) in common" without reference to a length of occupancy while an "apartment hotel" was defined as "an apartment house containing suites equipped for housekeeping purposes and in addition furnished rooms and dining service for transient and permanent guests[.]" (Webster's Third New International Dictionary (1961) p. 98.) Merriam-Webster's present-day definitions for apartment house and apartment hotel remain unchanged from 1961. (Merriam-Webster's Unabridged Dictionary, https://unabridged.merriamwebster.com/unabridged/apartment%20building [as of Nov. 15, 2021]; Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/apartment%20hotel [as of Nov. 15, 2021]; see also Dictionary of Architecture and Construction (1975) p. 20 [an apartment hotel is "[an] apartment house which supplies living quarters suitable for light housekeeping and has public dining facilities."].) It is evident the term apartment house in common usage does not indicate only long-term occupancy, whether in 1956 or in the present day. The People's argument fails.

**D. The Permissive Zoning Scheme Does Not Apply to Length of Occupancy**

The People further rely on the principle that "the expression of certain things in a statute necessarily involves exclusion of other things not expressed" to argue the City

21

Council's express limitation of a TORS occupancy to 30 days or less means that an Apartment House is limited to occupancies of more than 30 days.  (*City of Corona v. Naulls* (2008) 166 Cal.App.4th 418, 420–421 (*Naulls*); *Federal Deposit Ins. Corp. v. Superior Court* (1997) 54 Cal.App.4th 337, 345.)  The People's permissive zoning argument is as follows:  An Apartment House is a subset of a TORS.  The physical characteristics of both are almost identical except a TORS may include "*one* or more dwelling units" while an Apartment House may include "*three* or more dwelling units." (LAMC, § 12.03, italics added.)  In all cases, an Apartment House that provides occupancy for 30 days or less fits the definition of a TORS.  A TORS is not authorized for use in an R3 zone.  Thus, an Apartment House may only provide rentals for 31 days or more to be authorized to operate in an R3 zone.

We are not persuaded a long-term occupancy requirement for an Apartment House may be inferred from the definition limiting TORS to occupancies of 30 days or less.  The TORS provision was added by ordinance number 167,689 and became effective May 9, 1992.  (LAMC, § 12.03.)  The definition for an Apartment House, added to the Zoning Code on September 23, 1956, had existed for approximately 36 years prior to the ordinance which created the TORS category.  There is nothing in the record to show the City Council intended to add a length of occupancy to the long-established definition of an Apartment House when it passed the TORS-related ordinance.  "Courts are reluctant to accept that legislatures enact important or fundamental changes by silent indirection." (*Bunzl Distribution USA, Inc. v. Franchise Tax Bd.* (2018) 27 Cal.App.5th 986, 997; see, e.g., *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 940; *California Redevelopment Assn. v. Matosantos*

22

(2011) 53 Cal.4th 231, 260–261.)  If the City Council intended to add a length of occupancy requirement to the definition of Apartment House, it could have done so at any time.  Instead, the definition has remained the same for 65 years and is silent on the issue, indicating the City Council did not intend to regulate the length of occupancy in an Apartment House when it enacted the ordinance defining the term in 1956 and when it enacted the TORS provision in 1992.

Additionally, we observe a flaw in the People's logic. Venice Suites' use is expressly authorized under a permissive zoning scheme:  It operates 417 OFW as an Apartment House, a structure that meets the definition under LAMC 12.03 and a land use that is specifically permitted in an R3 zone.

The permissive zoning argument, on the other hand, does not apply in the manner suggested by the People because the Zoning Code does not contain "the expression of certain things" (i.e., long-term occupancy in an apartment house) which "necessarily involves exclusion of other things not expressed" (i.e., short-term occupancy in an apartment house).  Instead, no length of occupancy requirement is expressed in the definitions for Apartment House, apartment hotel, hotel, or residential building. Only the TORS definition expressly authorizes short-term occupancy.  Application of the permissive zoning scheme in the manner urged by the People would lead to an absurd result where neither short-term nor long-term occupancies would be allowed for an Apartment House, apartment hotel, hotel, or residential building because a length of occupancy is "not expressed."  (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037 [statutory interpretations that lead to absurd results are to be avoided].)

The marijuana dispensary cases that rely on a permissive zoning scheme are distinguishable because, in each of those cases, marijuana dispensaries either did not fall within the city's list of allowable uses or were expressly prohibited. (*Carrnshimba, supra,* 215 Cal.App.4th at p. 1073; *Naulls, supra,* 166 Cal.App.4th at pp. 420–421; *City of Dana Point v. New Method Wellness, Inc.* (2019) 39 Cal.App.5th 985, 989–990; *Urgent Care Medical Services v. City of Pasadena* (2018) 21 Cal.App.5th 1086, 1094.)  That is not the case here.

### E.  The RSO and TOT Do Not Regulate the Use of an Apartment House

Neither are we persuaded by the People's argument the Zoning Code must be read in conjunction with the RSO and TOT to conclude only tenants and not transients may occupy Apartment Houses.  This argument was rejected by the trial court below and we agree it requires a selective reading of disparate portions of the Zoning Code, RSO, and TOT without regard to the intent behind each of these ordinances.

The People argue 417 OFW is subject to the requirements of the RSO, which extends to all rental units.  (LAMC, § 151.00, et seq.)  "Rental units" include "[a]ll dwelling units, efficiency dwelling units, guest rooms, and suites, as defined in Section 12.03 [of the Zoning Code]" but exclude, among other things, "[h]ousing accommodations in hotels, motels, inns, tourist homes and boarding and rooming houses, provided that at such time as an accommodation has been occupied as the primary residence of one or more of the same tenants for any period more than 30 days such accommodation shall become a rental unit subject to the provisions of this chapter."  (LAMC, § 151.02.)  A tenant under the RSO is defined as a "person entitled to use or occupancy of a

24

rental unit." (*Ibid.*) According to the People, a rental unit, by definition, is limited to occupancies lasting longer than 30 days. Thus, a tenant under the RSO is someone who occupies a rental unit for more than 30 days.

By contrast, a transient is defined by the TOT, in pertinent part, as "[a]ny individual who personally exercises occupancy . . . for a period of 30 consecutive calendar days or less[.]" Relying on the definitions for rental units and tenant found in the RSO and transient in the TOT, the People argue that only a tenant is entitled to use or occupy rental units. Transients, on the other hand, may not occupy rental units because occupancies of 30 days or less are not included within the definition of rental units. Because the dwelling units, guest rooms, or suites in an apartment house constitute rental units subject to the RSO and transients may not occupy rental units, the People reason that transients also may not occupy apartment houses.

We are not persuaded. As we discussed above, the City Council enacted the Zoning Code to "consolidate and coordinate all existing zoning regulations and provisions into one comprehensive zoning plan in order to designate, regulate and restrict the location and use of buildings, structures and land, for agriculture, residence, commerce, trade, industry or other purposes." (LAMC, § 12.02.) In short, the Zoning Code is intended to regulate all uses of buildings for residential purposes.

The RSO, on the other hand, regulates rents, in pertinent part, to safeguard tenants from excessive rent increases due to the lack of "decent, safe and sanitary housing at affordable rent levels." (LAMC, § 151.01.) It is clear the City Council enacted the RSO to address a shortage of affordable housing. Its stated

25

purpose is not to resolve a general housing shortage by regulating short-term rentals.  Neither does the RSO state an intent to regulate the occupancy of residential buildings, as asserted by the People.  It merely denies the benefit of rent control to those individuals who rent accommodations at hotels, motels, inns, tourist homes and boarding and rooming houses for 30 days or less.  (LAMC, § 151.02.)

The rules of statutory construction dictate we rely on the Zoning Code rather than the RSO and TOT to effectuate the City Council's purpose.  (*People v. Gonzalez, supra,* 2 Cal.5th at p. 1141.)  Here, we are required to decide what is an allowable use of a residential building located in an R3 zone.  The Zoning Code addresses precisely this issue because it regulates all uses of buildings for residential purposes.

As discussed above, the Zoning Code expressly authorizes the use of an Apartment House in an R3 zone for human habitation with no length of occupancy restriction.  The Zoning Code does not limit the occupancy of Apartment Houses to only tenants.  Even if it did, however, the Zoning Code defines a tenant as "[a] person who rents, leases or sub-leases, through either a written or oral agreement, residential real property from another," with no length of occupancy restriction.  We decline to disregard the Zoning Code's definition of tenant and adopt the RSO definition of tenant to impose a length of occupancy restriction that is not there.

In any case, the Zoning Code, the RSO, and the TOT do not conflict with the concept of an Apartment House that encompasses both short-term and long-term occupancies.  Indeed, the TOT expressly contemplates that Apartment Houses may be occupied by transients, who exercise occupancy for 30 days or

26

less.  Under the TOT, a hotel is defined as "any structure, or any portion of any structure, which is occupied or intended or designed for occupancy by *transients* for dwelling, lodging or sleeping purposes, and includes any . . . *apartment house*, dormitory, public or private club, or other similar structure or portion thereof. . . ."  (LAMC, § 21.7.2(b) [italics added].)

By its plain language, the RSO extends the benefits of rent control to the dwelling units, guest rooms, and suites that make up Apartment Houses if the occupancy lasts longer than 30 days because a landlord may not demand more than the permitted maximum monthly rent, which is adjusted from time to time. (LAMC, § 151.04.)  That the RSO applies only to monthly, and not weekly or daily, rent does not compel the conclusion that an Apartment House is limited to long-term occupancy in the Zoning Code.  If an Apartment House is occupied for 30 days or less, it simply does not benefit from the provisions of the RSO.  Our conclusion that an Apartment House may include short-term or long-term occupancies does not conflict with the RSO or the TOT.

27

## DISPOSITION

The judgment is affirmed.  Venice Suites is entitled to costs on appeal.

**CERTIFIED FOR PUBLICATION**


OHTA, J.[*]

We Concur:


GRIMES, Acting P. J.


WILEY, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.