Filed 1/16/26  Sherry H. v. Cho CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SHERRY H.,<br><br>　　　　Respondent,<br><br>　　v.<br><br>CHRISTINA CHO,<br><br>　　　　Appellant. | B337685<br><br>(Los Angeles County<br>Super. Ct. No. 23PDRO01890) |

　　　　APPEAL from an order of the Superior Court of Los Angeles County, Timothy Martella, Judge.  Affirmed.

　　　　Gordon C. Strange for Appellant.

　　　　No appearance for Respondent.

_____

Christina Cho, a former home care aide for an elderly and incapacitated woman, Sherry H.,[1] appeals from a one-year restraining order protecting Sherry under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.).[2] Cho makes one argument on appeal: The trial court violated her due process rights by refusing to allow her to present a second witness at the restraining order hearing.

While this appeal was pending, the restraining order expired. Although typically the expiration of a restraining order renders the appeal from the order moot, we conclude Cho's appeal is not moot because of the potential that even an expired restraining order could affect Cho's ability to obtain work as a home care aide. However, we determine the court did not violate Cho's due process rights and thus affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.   *The Petition*

On December 22, 2023 Sherry's power of attorney and appointed healthcare agent, Jenna S., filed for an elder abuse

---

[1]   We refer to the adult protected party, as well as her power of attorney and medical agent and her trustee, by their names and last initials. (See Cal. Rules of Court, rule 8.90(b)(8) [permitting abbreviation of names of "[p]rotected persons in elder or dependent adult abuse-prevention proceedings" to protect their privacy interests].)

[2]   Further statutory references are to the Welfare and Institutions Code, unless otherwise noted.

restraining order against Cho on Sherry's behalf.[3]  Jenna alleged she had hired Cho as Sherry's home care aide approximately three years earlier and had recently terminated her in writing on December 11, 2023.

Cho had recently started displaying "unstable" and "manic" behavior and was increasingly "erratic, aggressive, hostile and belligerent."  Cho had suggested she could assist in accelerating Sherry's death.  Jenna also asserted on one occasion Cho had abandoned her work shift without notice until 30 hours afterwards.

After being terminated, Cho responded that Jenna lacked authority to fire her, then dismissed the home care aide scheduled to be on duty at Sherry's home and indicated she would return to work the next day.  Although Jenna instructed her not to return, Cho showed up at Sherry's home and told the aide who was present to leave.  Jenna called the local sheriff's department and a deputy arrived; Cho falsely claimed to have power of attorney before being escorted from the premises.

Jenna further alleged that Cho had called a detective at the sheriff's department "numerous times, becoming increasingly

---

[3]     Cho's record on appeal—consisting only of the restraining order, the hearing transcript, and the notice of appeal—is inadequate.  An appellant must provide an adequate record to support any claims of error.  (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [" 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' "].)  We requested Sherry's petition for a restraining order from the superior court and on our own motion augment the record to include it.  (Cal. Rules of Court, rule 8.155(a)(1)(A).)  In addition, we augment the record to include the minute orders showing the restraining order was not renewed.

3

agitated with each call." In these calls, Cho made accusations of elder abuse by Jenna and falsely claimed that Jenna had transferred title of Sherry's home to herself. The calls triggered multiple visits from law enforcement and Adult Protective Services, including late at night, causing Sherry confusion and distress. The sheriff's detective believed Cho intended to continue to go to Sherry's home and recommended Jenna request a restraining order. He described Cho to Jenna as "unhinged."

Jenna also asserted Cho attempted to fraudulently revoke Jenna's existing power of attorney to gain control of Sherry's finances. Jenna received a revocation document mailed from Redondo Beach—near where Cho lives—purportedly signed by Sherry, who lacked capacity to revoke Jenna's power of attorney due to a major neurocognitive disorder. Jenna alleged Cho or someone acting with her took Sherry to a notary to execute the revocation, of which Sherry had no memory or understanding. Jenna also asserted Cho took a blank signed check from Sherry's bank account and made it payable to Cho's husband in the amount of $5,000.

Jenna alleged Sherry suffered psychological harm from the numerous home visits from sheriff's deputies and Adult Protective Services caused by Cho's false reports, harm from Cho's attempt to fraudulently revoke Jenna's power of attorney so that Cho could take over Sherry's finances, and financial harm from Cho writing her husband a check for $5,000 from Sherry's account.

B.    *The Hearing*

In February 2024 the court held a hearing on the request for a restraining order. The court denied Jenna's request for a

4

continuance so that the sheriff's deputy who had interacted with Cho could be present to testify.

Jenna testified that Cho returned to Sherry's home after being told not to, dismissed the caretakers who were there, and installed herself in the home. After the sheriffs escorted her away, Cho told them she was planning to return to the home. The sheriffs told Jenna they believed Cho would continue to return to Sherry's residence. They had received dozens of calls from Cho. Jenna testified that her concern Cho would return to Sherry's home was the only reason Jenna was pursuing a restraining order. Jenna was concerned for Sherry's safety, given the recent personality changes in Cho.

During Jenna's testimony, the court indicated, "I don't usually restrain people from calling the police . . . . I don't do that," and indicated instead it was focused on Cho returning to Sherry's home and the sheriff having to remove her. The court indicated it needed to decide if Cho would return to the home if there was no restraining order in place. The court excluded Jenna's second witness, her husband, because his planned testimony (about Cho's remarks about accelerating Sherry's demise) would be cumulative.

The court then asked Cho's attorney if he wished to call a witness, and Cho's counsel said, "Two witnesses. Ms. Cho." He did not identify the second intended witness.

Cho testified that Jenna told her to stop feeding and giving water to Sherry, and that Jenna said she "needed Sherry to die soon but preferably after Christmas." Cho said she reported the conversation to Adult Protective Services because, as Sherry's caregiver, she felt obligated to report potential abuse. Cho admitted she called the sheriff's department "probably 15 times"

5

because she was worried about Sherry's safety.  She said she would like to work with Sherry again but would not return to the home unless invited.  Cho testified the restraining order had barred her from continuing to work as a home care aide, and that a permanent order would make her unemployable in that field.

During Cho's testimony, the court indicated it was not interested in testimony about the revocation of Jenna's power of attorney.  The court stated, "I'm not interested in the estate documents," and said, "I'm not going to restrain her because she had that document."  In addition, when Cho addressed the allegation in the petition that Cho had written a $5,000 check to her husband from Sherry's bank account, testifying that Sherry's bookkeeper had issued the check to reimburse her for an injury at work, the court noted it had not "heard any evidence that there was money stolen," and Jenna's counsel indicated the issue was not relevant to the proceedings.  In addition, the court cut off Cho's counsel's attempt to question Cho about the purported allegation in the petition that Cho had left Sherry alone for 30 hours; the court indicated it did not believe there was any evidence that had happened.

After Cho's testimony, the court asked Cho's counsel why the restraining order should not issue.  Cho's counsel argued that the request for restraining order was based on three grounds: "the wrongful appropriation of trust," "the stealing of the $5,000," and "the abandonment of Sherry for 30 hours.  That never happened."  Counsel was then in the middle of stating "I've also got a witness to testify that –" when the court said, "I'm not interested in those –."  Cho's counsel then continued his argument, ending with, "And that's it."

The court pronounced its ruling orally, finding Jenna had demonstrated that Cho harassed Sherry and would continue to go to her home absent a restraining order. Cho's counsel did not object that Cho had another witness to present or make an offer of proof, but instead stated, "I would ask the court to not issue the order because she's made representations to the court under oath that she would not go back nor contact her unless invited." The court responded, "I heard that, but I wasn't convinced," and concluded the hearing.

The court issued a one-year restraining order, set to expire in February 2025. Cho timely appealed.

In January 2025 Jenna requested a renewal of the order, and the court issued a temporary restraining order. However, in July, Jenna withdrew the request, and the court dissolved the temporary restraining order.

## DISCUSSION

A.  *Legal Standards and Standard of Review*

Under section 15657.03, an elder (defined as a California resident 65 years of age or older) who has suffered abuse may seek a protective order "enjoining a party from abusing, intimidating, . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, or coming within a specified distance of, or disturbing the peace of, the petitioner." (§§ 15657.03, subds. (a)(1), (b)(5)(A), 15610.27.) An elder's attorney-in-fact acting within the authority of a power of attorney is authorized to seek a restraining order on behalf of the elder. (§ 15657.03, subd. (a)(1).)

" 'Abuse of an elder' " includes "[p]hysical abuse, neglect, abandonment, isolation, abduction, or other treatment with

7

resulting physical harm or pain or mental suffering."
(§ 15610.07, subd. (a)(1).) "[U]nder section 15610.07, subdivision (a)(1), 'treatment' that is neither physical abuse, neglect, abandonment, isolation nor abduction, can constitute elder abuse if the treatment results in 'physical harm or pain or mental suffering.'" (*Darrin v. Miller* (2019) 32 Cal.App.5th 450, 456.) "Mental suffering" is defined as "fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats, [or] harassment." (§ 15610.53.) Abuse of an elder also includes financial abuse. (§§ 15610.07, subd. (a)(3), 15610.30, subd. (a)(1).)

"Elder abuse protective orders are reviewed for abuse of discretion, and the factual findings necessary to support such orders are reviewed for substantial evidence." (*Herren v. George S.* (2025) 109 Cal.App.5th 410, 427-28; accord, *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137.) The trial court's evidentiary rulings are also reviewed for abuse of discretion. (*Meeks v. Autozone, Inc.* (2018) 24 Cal.App.5th 855, 861.) "The trial court's 'discretion is only abused where there is a clear showing [it] exceeded the bounds of reason, all of the circumstances being considered.'" (*Ibid.*)

B.      *Mootness*
The restraining order against Cho expired in February 2025. Although Jenna initially sought to renew the order, she later withdrew the request, and the court dissolved the temporary order. Thus, the restraining order is no longer in effect.

" 'It is well settled that an appellate court will decide only actual controversies and that a live appeal may be rendered moot by events occurring after the notice of appeal was filed.' " (*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 866.) " 'If relief granted by the trial court is temporal, and if the relief granted expires before an appeal can be heard, then an appeal by the adverse party is moot.' " (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1079; see *San Diego Police Dept. v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 564 ["Ordinarily, an appeal from an expired restraining order is moot because the appellate court cannot grant any effective relief from an expired order."]; see *Newman v. Casey* (2024) 99 Cal.App.5th 359, 376.)

However, given the particular circumstances here, we conclude Cho's appeal is not moot despite the expiration of the restraining order. "The information 'on a protective order relating to elder or dependent adult abuse . . .' must be transmitted to law enforcement, either the Department of Justice or a local law enforcement agency authorized by the Department of Justice to enter orders into the California Law Enforcement Telecommunications System (CLETS). (§ 15657.03, subd. (p)(1), (3)(A)-(B).)" (*Newman v. Casey*, *supra*, 99 Cal.App.5th at p. 381.) Cho testified that if the court issued a permanent restraining order, she "will never be able to be a caregiver ever again." On appeal, she argues that as long as this restraining order remains on her record, "she will continue to suffer from the loss of her entire profession . . . as a caregiver, thus unendingly perpetuating the infliction of unending damages upon her." Due to the potential collateral implications for Cho's livelihood in the healthcare field in which she works, we conclude her appeal is

9

not moot. (See *San Diego Police Dept. v. Geoffrey S.*, *supra*, 86 Cal.App.5th at p. 564 [appeal from expired restraining order not moot where appellant "asserts that as a result of the restraining order, he faces an investigation by the Ohio State Bar where he is currently licensed and in good standing" and because "he will now be listed in a database alerting law enforcement he is a potential threat"]; see also *In re S.R.* (2025) 18 Cal.5th 1042 [parent's challenge to dependency court's jurisdiction findings is not moot when the parent shows that the challenged allegation is one that an agency must report for inclusion in the Child Abuse Central Index].)

C.     *Merits*

Cho contends that in granting the elder abuse restraining order protecting Sherry, the trial court "dismisse[d] cavalierly and ignore[d]" Cho's counsel's statement that he had another witness to call, "thus preventing [Cho] from presenting her full defense as is her constitutional right re due process under the l4th Amendment." She contends this "key witness" was needed to corroborate that Cho is a person who tells the truth and to refute the three allegations on which the petition for a restraining order were based.

"[A] party's opportunity to call witnesses to testify and to proffer admissible evidence is central to having his or her day in court." (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357.) At the same time, however, " '[i]t is . . . well established that courts have . . . inherent power to control litigation before them. . . . ". . . That inherent power entitles trial courts to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly

administration of justice." ' " (*Id.* at p. 1351; see *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 ["Courts have inherent power to control litigation before them."].) Application of the ordinary rules of evidence generally does not impermissibly infringe on a party's constitutional rights. (See *People v. Cudjo* (1993) 6 Cal.4th 585, 611; *People v. Garcia* (2018) 28 Cal.App.5th 961, 969.)

Even if a witness's testimony was erroneously excluded, reversal is warranted only if the error resulted in a miscarriage of justice. (Evid. Code, § 354; see Cal. Const., art. VI, § 13.) Cho must demonstrate it is reasonably probable that, but for the error, she would have obtained a more favorable result. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800; *640 Octavia LLC v. Walston* (2025) 111 Cal.App.5th 861, 869.) " '[A] "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " (*Cassim*, at p. 800.)

Further, in order for an appellate court to reverse a decision for the erroneous exclusion of evidence, "[t]he substance, purpose, and relevance of the excluded evidence" must have been "made known to the court by the questions asked, an offer of proof, or by any other means," unless the court's rulings made this impossible. (Evid. Code, § 354, subds. (a), (b); see *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282 [failure to make adequate offer of proof generally precludes appellate review of ruling on excluded evidence].)

Cho has not met her burden to show that the superior court committed reversible error in failing to allow Cho to present her second witness. First, while Cho now contends she intended to call Judy D., the co-trustee for Sherry along with Jenna, Cho has

11

not demonstrated that she ever identified Judy as the second witness she wished to call.[4]  Second, and more importantly, Cho failed to make an offer of proof of the proposed testimony by this witness.  Although Cho's counsel was in the middle of stating he had a witness to testify when the court interrupted him, it is unclear from the record if the court even heard or understood Cho's counsel to be requesting to call another witness.  Cho's counsel did not follow up and request that the court permit him to call another witness, and did not put on the record the subject of the witness's proposed testimony.  Rather, Cho's counsel suggested he was done with the presentation of evidence on behalf of Cho, stating, "And that's it."  Thus, Cho failed to make a proper record that would justify reversal of the restraining order.  (See Evid. Code, § 354, subd. (a); *Shaw v. County of Santa Cruz, supra*, 170 Cal.App.4th at p. 282.)

In any event, the subjects of Judy's intended testimony were not germane to the narrow ground on which the court issued the restraining order:  Cho's return to Sherry's home after being terminated and likelihood that she would do so again.  Cho contends her witness would have refuted the allegations in Jenna's petition about Cho's reports to the sheriff and Adult Protective Services, the allegedly fraudulent revocation of Jenna's power of attorney, and the alleged theft of funds from Sherry's checking account.  But the court made plain it would not and did not issue the restraining order based on any of that alleged conduct.  As such, the witness's testimony would have added nothing material to the court's analysis, and it was not an

---

[4]     Although the opening brief refers to a declaration from Judy corroborating that she was present at the restraining order hearing, no such declaration is in the record.

12

abuse of discretion to exclude it.  Moreover, Cho has not demonstrated she suffered prejudice from the exclusion of the witness.  (See *Cassim v. Allstate Ins. Co.*, *supra*, 33 Cal.4th at p. 800 [reversible error for exclusion of witness requires showing of miscarriage of justice, which occurs " ' "only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error" ' "].)

## DISPOSITION

The order is affirmed.  Sherry shall recover her costs (if any) on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


STONE, J.

We concur:



MARTINEZ, P. J.



FEUER, J.